## Bracket v. Modern Brotherhood of America.

(Decided June 12, 1913.)

### Appeal from Lincoln Circuit Court.

1. Intoxicating Liquors—One Employed in Bottling House Not Engaged in Manufacture of Whiskey.—A person who is employed at a bottling house bottling whiskey in bond under the supervision of the United States government which was made four years before is not engaged in the manufacture of whiskey as a beverage.

2. Insurance, Life—Evidence as to Health of Member of Benefit Society.—The evidence being conflicting as to whether the member was in good health when he was reinstated, the question is for the jury.

3. Estoppel—Plea of.—Matter constituting an estoppel cannot be shown under a traverse.

J. N. SAUNDERS for appellant.

J. B. PAXTON and SPARROW, PAGE & REA for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Reversing.

Ora Bracket brought this suit against the Modern
Brotherhood of America to recover $1,000, the amount of
a certificate held by her husband in the Order. The
Order by its answer pleaded in substance that the by-
laws of the Order provide as follows:

"The certificate of any beneficial member of this So-
ciety, who is now engaged in the manufacture or sale
of malt, spirituous or vinous liquors as a beverage, in the
capacity of proprietor, stockholder, agent or employee, is
hereby declared to be, and is hereby made absolutely null
and void, and no payment made by such person of any
dues, or assessments of any character, or for any pur-
pose, to the secretary, or other officer of the subordinate
lodge of which he or she is a member, or to the Supreme
Secretary, or any officer the Supreme Lodge, shall have
the effect of waiving such forfeiture or reinstating such
certificate holder to any rights, benefits or privileges as
a member of this society.

"Should any person who is now or who shall hereafter
become a member of this Society, engage in the manufac-
ture, or sale, of malt, spirituous or vinous liquors as a
beverage in the capacity of proprietor, stockholder, agent
or employee, or be convicted of a felony after being
adopted into this Society, he shall thereby, by reason of
said facts, forfeit all rights as a member of this So-
ciety, and his certificate shall thereby become absolutely
null and void, without any action on the part of his sub-
ordinate lodge, the Supreme Lodge, or by this Society, or
any of the officers thereof; and the payment by such mem-
ber of any dues or assessments thereafter, or the accept-
ance thereof by the officers of his subordinate lodge or of
the Supreme Lodge or of this Society, shall not have the
effect of waiving such forfeiture or reinstating such per-
son to any rights, benefits or privileges as a member of
this Society."

It is also alleged that the plaintiff's husband, Isaac
Bracket, was not a farmer at the time of his application
as stated by him therein, but was then engaged in the
manufacture of spirituous liquors as a beverage in the
capacity of agent or employee, and that he continued in
this occupation from that time until his death. The cer-
tificate was issued on September 21, 1909. Bracket died
on July 23, 1911. The allegations of the answer as to
Bracket's occupation were denied by the reply. On the

trial of the case, J. W. West testified that Bracket commenced working in a bottling factory in the fall of 1905, and worked there constantly from that time until his death, except when they would lay off for a month or two. Bracket was the man that attended to emptying the whiskey out of the barrels into the tank, helped about bottling it. These duties he said were necessary for the sale of the whiskey. Henry Traylor owned the distillery and leased it to Paxton Brothers, who did business under the name of the Edgewood Distilling Company. He did not know whether Bracket was working for the bottling company on September 20, 1909, he might have laid off, if he was not there he was laid off. He did not know whether the bottling house was running on that date. Ora Bracket testified that on September 21, 1909, her husband was a farmer working for Mr. Dorst; that he worked for Dorst for about two weeks, and when he ceased to work for Dorst he worked on the court house, and when he got through there went back to the bottling house; when he joined the Society he was stacking hay for Dorst. He had been working at the bottling house before he went to work for Dorst; he worked there for about six years; he worked at the court house about two months then went back to the bottling house. E. H. Moeller testified that he was foreman at the bottling house, came there July 6, 1910; that Bracket worked for him from that time continuously up to his death; that he did all the work pertaining to the bottling of whiskey, and his work was mostly putting on labels, etc; this was necessary he said to put the liquor on the market. The work was done in a United States government warehouse operated under the supervision of the government and was a place where the sale of liquor was not tolerated or indulged in by the employees; everything in connection with the whiskey was under the supervision of the Federal government. Bracket did not handle the whiskey until four years after it was made, when it was put in bottles. On this evidence the circuit court instructed the jury peremptorily to find for the defendant; and the plaintiff's petition having been dismissed she appeals.

It will be observed that by the by-laws, the certificate of a member was void if he was "engaged in the manufacture or sale of malt, spirituous or vinous liquors as a beverage in the capacity of proprietor, stockholder, agent or employee." It is clear from the proof that the deceased was not engaged in the sale of malt, spirituous or vinous

liquors as a beverage. The only question to be determined is was he engaged in the manufacture of spirituous liquors as a beverage. He was employed at the bottling house; the work was done in a United States government warehouse operated under the supervision of the government. The whiskey was not bottled until four years after it was made, and it was then bottled under the supervision of the government. Bracket's duties were to attend to emptying the whiskey out of the barrels into the tanks, he helped about bottling it, and his work was mostly putting on labels, etc.

It is a sound rule that the language of insurance contracts being selected by the insurer, shall be construed against him, and that a recovery on the contract will not be denied the insured unless required by the terms of the contract naturally construed. The United States government taxes the manufacture of whiskey at so much per gallon. When the whiskey is made and put into barrels, it is placed in a government warehouse, and may remain there for a number of years. The tax on it is paid when it is taken out of the warehouse, or when the period for which it may remain in the bonded warehouse has expired. In the case at bar the whiskey had been manufactured and placed in the warehouse and four years afterwards, the owners, instead of selling it in barrels had the whiskey placed in bottles before selling it. Much whiskey is sold in barrels. The business of bottling whiskey in bond had much increased of late years from the fact that much rectified whiskey is on the market; and that whiskey that is bottled in bond and stamped by the government cannot be rectified whiskey. The bottling of whiskey however is not confined to the distiller who manufactures it; it may be bottled by others, and the fact that it is bottled by the distiller does not change the nature of the business. We do not think that the employees in this bottling house who were putting the whiskey in bottles four years after it was made, can fairly be said to have been engaged in the manufacture of spirituous liquors as a beverage; for the whiskey was a completed product when placed in the barrels and much of it is in fact sold in that way. Certainly the man who washed the bottles before the whiskey was put in them or who ran the machine by which the bottles were corked, would not be said to be engaged in the manufacture of spirituous liquors as a beverage, and we do not see that Bracket can be distinguished from either of these. He was simply helping to

put in bottles the whiskey which had been made four years before, and had been for four years lying in a warehouse. The fact the work was done at a distillery, and not somewhere else, does not change the character of the employment. When the insured has taken out insurance and paid his assessments in good faith, he should not be denied a recovery on his policy, unless the language of the policy, fairly construed, was sufficient to put him on notice of the restriction; and in a matter of doubt the doubt should be resolved in favor of the insured. We, therefore, conclude that the deceased was not, under the evidence, engaged in the manufacture of spirituous liquors as a beverage, and that the court should not have instructed the jury peremptorily to find for the defendant on this ground.

The defendant by its answer pleaded in substance that it was stipulated in the contract that the insured should pay his assessments in each calendar month, and that if he failed to pay his certificate became void; that any member suspended for the non-payment of his assessments, might be reinstated by the payment within sixty days of his dues, provided he was in good health at the time of his reinstatement; that the deceased failed to pay his assessments in the month of June, and that he paid them on July 2, and was reinstated, but that at that time he was not in good health, but was suffering from the disease which afterwards resulted in his death. The plaintiff by her reply denied that the insured was not in good health when he paid the assessment and was reinstated or that he was then suffering with the disease from which he died. The proof on the trial by his wife was that he was taken sick on July 5. The proof for the company by a physician was that the deceased consulted him on July 2, but the physician's evidence is not clear as to the cause of this consultation. Under the evidence the question should have been submitted to the jury.

It is insisted for the appellant that the defendant waived its right of forfeiture for non-payment of assessments because its custom was to receive the stipulated payments though made after the time required by the contract, and that it is, therefore, estopped from enforcing the forfeiture, although the deceased was not in good health when he made the payment. But an estoppel must be pleaded; matter in estoppel cannot be given in evidence under a traverse. On the return of the case the

plaintiff will be allowed to amend her reply if she desires to do so.

Judgment reversed and cause remanded for further proceedings consistent herewith.