(No. 25014.—

THE SMITH OIL AND REFINING COMPANY, Appellee, *vs.* THE DEPARTMENT OF FINANCE, Appellant.

*Opinion filed April 19, 1939—Rehearing denied June 8, 1939.*

JONES, J., dissenting.

JOHN E. CASSIDY, Attorney General, (MONTGOMERY S. WINNING, W. F. GRAY, and MARTIN PHILLIPSBORN, JR., of counsel,) for appellant.

L. C. MILLER, for appellee.

Per CURIAM: This is a direct appeal from a judgment of the circuit court of Winnebago county setting aside an occupation tax assessment made by the Department of Finance against appellee, the Smith Oil and Refining Company.

Appellee, in the course of its business of wholesale and retail jobber, sold core oil to foundries for making cores in the forms of moulding iron. The sole question for us to determine is whether such sales were "for use and consumption and not for resale in any form as tangible personal property," as provided in section 1 of the Retailers' Occupation Tax act. (Ill. Rev. Stat. 1937, chap. 120, par. 440.) To determine this question it is first necessary to understand the use which is made of core oil by the foundries.

The purchasers of the core oil are engaged in the business of making iron castings to be sold by them. In many castings voids or cavities are necessary. In order to make these voids cores are used. The cores are made in the shape and size of the desired void. The core is placed inside the mould and hot metal is poured in the space between the core and the mould. When the metal solidifies, it is the iron casting. The core is composed of sand and core oil. The function of the core oil is to bind the grains of sand together. After the metal has cooled the core is removed. It is conceded the core oil is not resold as core oil. The decisive issue is whether it is resold "in any form" as tangible personal property.

The position of appellee is that under high temperature some of the core oil decomposes and that a portion of the carbon formed by such decomposition is absorbed by and becomes a part of the iron casting. The conclusion from the argument is that the core oil is thus resold in another form,—i. e., in the form of carbon.

The general rules of law applicable are not in dispute. If in the process of manufacturing, the core oil, in any form, becomes an ingredient or constituent of the iron castings, it is resold as tangible personal property and the vendor of the oil is not subject to the tax. But if, on the other hand, it is used merely as a part of the core around which the iron is poured, and no part of it becomes an integral part of the finished product, either as core oil or as carbon, it is not resold and the vendor of the oil is subject to the tax.

One expert testified for appellee and one for appellant. D. F. Forbes, president of the Gunnite Foundries, Inc., a purchaser of core oil from appellee, testified for appellee, and after describing the nature and purpose of cores, stated that core oil was used as a binder to hold the grains of sand together; that at the high temperature to which the core is subjected, the oil begins to break down, some of the carbon from the oil escapes in the form of gas, some remains in the core, and that some is absorbed by the iron. He was unable to give any definite percentage, and stated he did not know the chemical analysis of the core oil used. He did not know how much of the oil was dissipated in the moulding process or was made into carbon on the finished product. As to how much of the carbon would be absorbed, he testified, "I can't give a definite figure nor can I give an approximate figure." He said it was less than fifty per cent, but whether it was forty-nine per cent or five per cent he could not say. He testified that within a certain range carbon has a tendency to prevent the iron from cooling too fast, with the result the iron was softer

and easier to machine,—*i. e.*, to remove the rough surface by means of cutting instruments. However, he admitted that "if you wanted a great amount of carbon you wouldn't rely on core oil."

Elmer O. Sellers, a chemist for the Division of Highways of Illinois, testified, in behalf of appellant, the amount of carbon absorbed by the iron would be so small that it would be difficult to prove by a chemical analysis that any absorption actually took place. In his opinion the increase in the carbon content of the casting resulting from absorption from the core oil would be less than one-half of one per cent.

We are convinced from the evidence that appellee was not selling core oil to purchasers for resale in any form. It is clear the core oil was not purchased for the purpose of adding carbon to the finished castings. The function of the core oil was to form a part of the core, and of course, the core was not a part of the finished castings any more than was the machinery used in their manufacture. If any of the carbon from the core oil was absorbed it was largely coincidental. According to appellee's own witness, no tests had been made to determine whether core oil did increase the carbon content of the castings. He stated that if a great amount of carbon was wanted, core oil would not be relied on. He did not testify that core oil was used for the purpose of increasing the carbon content of the casting. Before a commodity can be said to have been resold as an ingredient of the finished product, it must be shown to have been used with the intention that it should become a part of it, and not solely for some other and distinct purpose.

There is also force in appellant's argument that such a small percentage of the core oil enters into the finished product that the principle of *de minimis non curat lex* applies. (*Revzan v. Nudelman*, 370 Ill. 180.) It is unnecessary for us here to decide what proportion of the ingredient must become a part of the finished product before it can

be said to have been resold. It is clear from the evidence in this case that the amount of carbon added was insignificant and merely incidental.

We conclude that the core oil was not resold in any form but was used and consumed by the foundries, and that appellee is subject to the retailers' occupation tax.

The judgment of the circuit court is reversed.

*Judgment reversed.*

Mr. JUSTICE JONES, dissenting.