# Glenmore Distilleries Co., Inc., v. Department of Revenue et al.

June 9, 1939.

William B. Ardery, Judge.

506

S. H. Brown and Lee Gibson for appellant.

Hubert Meredith, Attorney General, Harry D. France, Assistant Attorney General, and H. Appleton Federa for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

The appellant, Glenmore Distilleries Company, brought this action against the Department of Revenue, the Kentucky Tax Commission and the Alcoholic Beverage Control Board, alleging that more than 1,500,000 gallons of whiskey in the warehouses of appellant on which it had paid the tax of 5 cents per gallon, commonly known as the production tax, amounting to $75,773.13, were destroyed by fire on November 12, 1938, without any fault on appellant's part, and claimed the right to manufacture the same number of gallons without the payment of an additional production tax thereon, seeking a declaration of rights to this effect. The trial court sustained the demurrer to the petition, and, the appellant declining to plead further, the petition was dismissed. This appeal follows.

In support of its position that it should be permitted to manufacture a like amount of whiskey without paying the production tax thereon, appellant urges:

(1) That it paid for the right to manufacture whiskey and that the manufacture was not completed because the aging of the whiskey had not been completed.

(2) That, even though the whiskey was actually manufactured, still the statute gave it the right to manufacture, transport and sell, and, as it had only manufactured and had not transported and sold, it has the right to remanufacture this whiskey without the payment of the production tax, in order that it may be transported and sold in accordance with the permit for which it paid.

(1) The tax in controversy in this case is imposed by Section 4214a-13, Kentucky Statutes, which is as follows:

"Every person engaged or proposing to engage in manufacturing, selling and transporting distilled

spirits in this State, for such uses and purposes as may be lawful, shall obtain from the State Tax Commission a permit to engage in the business or occupation of manufacturing, transporting and selling distilled spirits for said purposes and shall at the time of the issual of said permit, pay to the Commonwealth of Kentucky, in addition to the other license taxes provided by law, an excise tax of five cents * * * for each proof gallon of distilled spirits for which said permit is issued * * *."

It will be observed that the tax imposed by this section is for the manufacture of distilled spirits, not whiskey. The permits, as actually issued to appellant and paid for at the rate of five cents per gallon, authorized it to manufacture whiskey, which is merely one of many types of distilled spirits. It may well be doubted that the Department of Revenue could make the permit either broader or narrower than the statute provides. The only privilege it could confer upon appellant pursuant to the statute was the privilege to manufacture distilled spirits. The designation of the distilled spirits in the permit as whiskey may be regarded purely as a matter of description. Undoubtedly the appellant did manufacture distilled spirits, for the manufacture of distilled spirits is complete when the distillation process is finished.

Conceding, arguendo, however, that appellant purchased and paid for the privilege of manufacturing whiskey, we are of the opinion that it actually did manufacture whiskey. We may use our common knowledge and take judicial notice that whiskey is manufactured, and is a completed product, when it is placed in barrels. The manufacture of whiskey is probably more common to the State of Kentucky than any other state and any ordinary citizen knows that whiskey not only can be, but frequently is, sold and drunk immediately after it is placed in barrels. After it is placed in barrels and entered in the warehouse it is merely a matter of discretion on the part of the distiller or the owner of the whiskey, to whom he might have sold it, as to how long the aging process will be carried on. According to appellant's argument, however, manufacture is never complete until the whiskey is removed from the warehouse. It is true that under the United States Government regulations whiskey must be aged four years before it can be bottled in bond, but it is a fact well known to

every person having any knowledge whatsoever of the manufacture, sale or consumption of whiskey that it is frequently and commonly bottled and sold long before it has become four years old.

It is insisted for appellant, however, that the petition alleges that the manufacture of the whiskey was not complete and that the demurrer admits this fact. We do not agree with this contention for the reason that a demurrer does not admit conclusions of law. It only admits facts alleged by the pleader. The facts alleged show that the whiskey was actually manufactured, but the petition alleges an erroneous legal conclusion based on the facts alleged.

We are justified in the conclusion that manufacture of the whiskey in controversy was completed by a previous decision of this court in Bracket v. Modern Brotherhood of America, 154 Ky. 340, 157 S. W. 690, 691, 5 L. R. A., N. S., 1144, in which it was said:

"When the whisky is made and put into barrels, it is placed in a government warehouse, and may remain there for a number of years. The tax on it is paid when it is taken out of the warehouse, or when the period for which it may remain in the bonded warehouse has expired. In the case at bar the whisky had been manufactured and placed in the warehouse, and four years afterwards the owners, instead of selling it in barrels, had the whisky placed in bottles before selling it. * * * We do not think that the employes in this bottling house, who were putting whisky in bottles four years after it was made, can fairly be said to have been engaged in the manufacture of spirituous liquors as a beverage; for the whisky was a completed product when placed in the barrels, and much of it is in fact sold in that way."

We are in entire accord with the language of the court in that case and are therefore of the opinion that there is no merit in appellant's contention that the manufacture of the whiskey was not completed.

(2) It is insisted most earnestly in appellant's behalf that the statute in question grants the privilege of doing three things, manufacturing, transporting and selling, and that it was the legislative intent to tax at the rate of five cents per gallon each gallon of whiskey

which found its way into the ordinary channels of trade. In support of this argument, it refers to Kentucky Statutes, Section 2554b-57, imposing a tax of $1,000 on every person engaged in the business of manufacturing distilled liquors and argues that, as that statute imposes a tax on manufacturing, it is obvious that the five cents per gallon tax is paid for a privilege broader than manufacturing. We are in thorough accord with this much of appellant's argument, and the five cents per gallon tax under Section 4214a-13 is unquestionably paid, as recited in the statute, for the privilege of manufacturing, selling and transporting distilled spirits. However, the contention of appellant seeks to have us construe that statute as a guarantee on the part of the State that it will have the privilege of transporting and selling the distilled spirits if they are manufactured. We are firmly of the opinion that the Legislature had no such intent in mind. The mere fact that the Legislature failed to provide that if distilled spirits were destroyed after manufacture, the tax imposed should be abated or refunded, indicates an absence of legislative intent to afford relief to the taxpayer in the circumstances here presented. This case is somewhat analogous to Commonwealth ex rel. Sheriff of Woodford County v. Greenbaum, etc., 139 Ky. 138, 129 S. W. 555, in which it was held that the accrued ad valorem tax liability of the distiller was not defeated by an accidental destruction of the whiskey.

Appellant paid for the privilege of manufacturing, selling and transporting the whiskey destroyed by fire. It did manufacture the whiskey, thereby using up the permit to that extent. It did not get to exercise the privilege of selling the whiskey, but neither was it guaranteed by the State that this privilege should be exercised—appellant received a permission, not a guarantee.

Appellant urges as a persuasive equity supporting its right to remanufacture a like amount of whiskey without paying for a new permit the fact, alleged in the petition, that the United States Government remitted the United States tax due on this whiskey. This argument overlooks the fact that this remission was made pursuant to a Federal statute, 26 U. S. C. A., Section 1275(b), which provides that on production of satisfactory proof of the destruction of distilled spirits by accidental fire without any fraud, collusion, or negligence on the part of the owner thereof, the Secretary of the

Treasury shall remit all taxes due on the whiskey thus destroyed. The very fact of the existence of such a statute evidences legislative knowledge that a statute of this type was necessary in order that the taxes might be remitted. We have no such statute with reference to the five cents per gallon tax and the absence thereof evidences the legislative intent that there should be no refund or remission of the tax, or permission to remanufacture without payment of the tax, where the whiskey was actually manufactured but destroyed by casualty before transport and sale. We must assume that the Legislature, had it so intended, would have provided relief for the taxpayer in the situation here presented by providing for a refund of the taxes or permission to remanufacture without the payment of tax.

We have the greatest sympathy for appellant in this big loss which it has sustained, but we cannot permit that sympathy to impel us to legislate in its behalf. Appellant's argument would no doubt be very persuasive and appealing to the Legislature as an argument in behalf of a bill pending before it to afford relief to the taxpayer under the circumstances, but our function is to declare the law as it is written, not to legislate.

The judgment is affirmed, the whole court sitting.