BACARDI CORPORATION OF AMERICA, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent. SECRETARY OF THE TREASURY OF PUERTO RICO, Intervener.

No. 294. Argued March 5, 1953.—Decided June 30, 1953.

---

*Charles R. Hartzell, Rafael O. Fernández* and *José L. Novas,* for petitioner. *José Trías Monge, Attorney General (J. B. Fernández Badillo, Acting Attorney General,* on the brief) and *Arnaldo P. Cabrera, Assistant Attorney General,* for intervener, defendant in the main action.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The Treasurer of Puerto Rico, now the Secretary of the Treasury, levied a property tax for the year 1950–51 on the empty glass bottles and the cardboard cases as part of the personal property of the Bacardi Corporation of America, which it used in the manufacture and sale of "Bacardi Rum." Feeling aggrieved by the assessment, the taxpayer appealed to the former Tax Court. A trial on the merits was held and the latter court rendered judgment dismissing the complaint, after stating the following findings of fact:

"(1) Plaintiff, Bacardi Corporation of America, is engaged in the manufacture of rum. Its industrial process consists (a) in dissolving molasses with water and fermenting them after adding acid and yeast; (b) distilling them, once fermented; (c) aging the distilled product in barrels of special wood; (d) processing and storing, or what is known as redistilling; and (e) filtering and bottling the rum on the same day as a continuous process.

"(2) Commercially speaking, plaintiff's finished product is 'Bacardi rum' which consists of a bottle with a cap and a series of labels and stamps, the bottles being placed inside a case which reads 'Bacardi of America, Ron Bacardí.' This case which is plaintiff's commercial unit of sale contains a specific

number of bottles of a specific size and kind, filled with rum manufactured by the plaintiff.

"(3) Scientifically speaking, the finished product of plaintiff's industry is the rum immediately after it is bottled, since the product does not undergo any other industrial process within the bottle, nor are there any chemical reactions between the bottle and the rum.

"(4) Ninety-six percent of plaintiff's product is exported to the United States. In 1950 plaintiff exported to the United States forty-two percent of the total rum which was manufactured in Puerto Rico. Export was made in units of cases of rum.

"(5) The cardboard cases in which the bottles are placed as well as the bottles in which the rum is put are commercially finished products. Plaintiff neither produces nor manufactures either the former or latter.

"(6) Plaintiff does not sell its product at any stage or phase of its industrial process as is common to other manufacturers. Neither does the plaintiff sell rum in bulk, and its marketable product is the rum already bottled, with labels and stamps, and in cases.

"(7) According to the plaintiff's own expert testimony the bottle and the cardboard case are part of its finished product as 'an accessory to its sale.' The expert testimony of both parties revealed that the bottle and the case are needed for sale of the plaintiff's product since its unit of sale is a case containing bottles of rum and there is no selling at intermediate steps of the process or in bulk. Still, the case and the bottle are not a component of the rum, nor an ingredient of it, nor elements which speed or modify its manufacturing process, and they are not part of the rum from a scientific point of view.

"(8) During prior years and since 1945 the Treasurer of Puerto Rico did not levy a tax on the cases and on the empty bottles belonging to plaintiff."

The sole question for decision in this appeal is to determine whether the afore-mentioned bottles and cases are "raw material" for the purpose of the property tax exemption granted to such "raw material" by Act No. 61 of May 5, 1945 (Sess. Laws, p. 220) as amended by Act No. 30 of March 30, 1950 (Sess. Laws, p. 86).

■ The afore-cited Act No. 61, as amended, exempts from the payment of property taxes "raw material" which can be guaranteed to be destined for the production of finished articles. Sections 1 and 2 respectively of the Act define what is meant by "raw material" and "finished product" as follows:

"Section 1.—(Act of 1950) For the purposes of this Act, by 'raw material' shall be understood not only products in their natural form derived from agriculture or from the so-called extractive industries, but any by-product, any semi-manufactured product, or any finished product, provided the same is used either as an ingredient or an integral part of another industrial product so that when the industrial process is carried out, said raw material shall come wholly and completely to form a part of the finished product, or shall be completely consumed, be wholly extinguished, and cease to exist.

"Section 2.—(Act of 1945) By 'finished product, shall be understood that article for commerce which is obtained by combining two or more raw materials or submitting one or more of them to industrial processes, provided that in one or the other case predetermined methods are used and labor is used directly or indirectly."

No doubt, according to the afore-cited statutory provisions, a *finished product* may be considered as raw material for the purposes of tax exemption. But in order for such a *finished product* to be so considered, it must be used either as an ingredient or as an integral part of another industrial product so that when the industrial process is finished, that "raw material" [finished product] shall wholly and completely form a part of the finished product, or shall be completely consumed, wholly extinguished, and cease to exist. Therefore, in order to enjoy the tax exemption it is not enough that the "raw material," when this is a finished product, be used as an ingredient or as an integral part of another industrial product, but furthermore, when the industrial process is finished, the "raw material" must (1) have

become wholly and completely a part of the finished product or (2) be completely consumed, wholly extinguished and cease to exist.

Petitioner argues that the empty bottles and the cardboard cases are used as an integral part of its product "Bacardi rum" and that they also become wholly and completely a part of its product, and therefore the bottles and cases enjoy the legislative exemption as "raw material." In other words, petitioner urges that its finished product is "Bacardí rum", a product obtained by combining the finished product *rum* and the finished product *bottles* and *cases*.[1]

Petitioner is not correct. The language used by Act No. 61 when originally approved was broad enough to include the bottles and the boxes within the term "raw material." That law provided:

"Section 1.—For the purposes of this Act, by 'raw material' shall be understood not only products in their natural form derived from agriculture or from the so-called extractive industries, but any by-product, any semi-manufactured product, or any finished product, provided the same is used either as an ingredient in the manufacture of another industrial product or as an accessory or integral part of said other industrial product."

It was under this legal provision that the former Tax Court decided on November 10, 1949, in *J. R. Nieves & Cía. v. Tesorero*, 6 *D.T.C.* 53, that the barrels or casks where the rum was aged were exempted from the payment of property taxes. That decision was based on the grounds that the evidence had shown that a chemical reaction occurred

---

[1] Petitioner concedes that the findings of facts of the trial court are all correct, except the seventh. It contends that rum is not the finished product to which § 2 of Act No. 61, as amended, refers. In its brief it states: "We assume that the rum is in itself a *finished product* only for the purpose of discussing this error, for we believe that while the rum is not bottled it is not a finished product because it is not ready for the market, *i. e.*, it is not fit for sale to the ultimate consumer for the latter's use."

between the barrel and the rum which was necessary to the industrial process of manufacturing the product, the barrels being in part an ingredient and in part an accessory of the rum. The legislature, considering that this decision opened the door for tax exemption to a large number of products or materials, decided to narrow the opening while still preserving the intention of promoting industry, and for that purpose it amended the Act restricting the definition of "raw material." As it appears from the Minutes of the House of Representatives, the intention of the proposed and approved amendment, included two fundamental aspects, to wit: (a) to eliminate the phrase "or as an accessory" and (b) "To add the provision that for a product or material to be exempted it must disappear or be consumed through becoming an integral part of the finished product. The idea is to exclude casks and other machinery or accessories." Minutes of the House of Representatives of 1950, p. 383; *Treas. of P. R.* v. *Tax Court, Suárez, Int;* 74 P.R.R. 253. This amendment annulled prospectively the effects of the decision in *J. R. Nieves, supra.* Granting that the casks continue to be used as ingredients of the industrial product—rum—still it is clear that the barrels do not wholly and completely become a part of the industrial product. It is obvious that the bottles and the cases are not used as an ingredient of the rum. *Cf. Smith Oil & Refining Co.* v. *Department of Finance,* 371 Ill. 405, 21 N.E. 2d 292. It is also obvious and thus unnecessary to discuss any argument to the contrary that neither the bottles nor the cases are completely consumed, wholly extinguished and without existence after the industrial process of bottling the rum and packing the bottles is carried out. Petitioner urges, however, that the bottles and cases are used as an integral part of Bacardi rum, and that when the industrial process is carried out [bottling and packaging] such bottles and cases become wholly and completely a part of the finished product.

It argues that "the integration to which § 1 refers is a physical or structural integration that is, the union of two raw materials which are already finished products to form an industrial product. The liquid 'rum' cannot be handled at all unless it has a container which integrates it and gives it a form which permits handling; the bottle gives the rum shape in the sense of structural integration, it creates a structure in which the liquid *rum* is confined, making it fit for handling. It is for that purpose that the bottle is *used* since as such a container it never loses its individuality but remains joined with the other finished product *rum* which makes use of its qualities as a bottle." This argument, although well elaborated, is not decisive. [3] Tax exemptions must be strictly construed, *Teachers' Ass. Etc.* v. *Treasurer*, 54 P.R.R. 511, 513; and a construction of the Act in the form asked by petitioner would broaden the limits of the exemption. Let us see. The first difficulty is to determine what is meant by *an integral part*. [4] In the absence of a statutory definition, we give a phrase its common and ordinary meaning, *Puerto Rico Ilustrado* v. *Buscaglia, Treas.*, 64 P.R.R. 870; *Old Colony R. Co.* v. *Commissioner*, 284 U. S. 552, 560, although in statutes granting tax exemption the same phrase must be construed more strictly, *City of Henderson* v. *George Delker Co.*, 235 S. W. 732, because of the rule of statutory construction already stated.

We can not agree with petitioner's contention that the bottles and the cases are used as an integral part of the rum they contain. According to the *Diccionario de la Lengua Española* (17ª Ed., 1947), the word *"integrante"* [1A] (integrant) has the same definition as the word *"integral"* (integral) in its first meaning, the definition of the latter word

---

[1A] "*Aplícase a las partes que entran en la composición de todo, a distinción de las partes que se llaman esenciales, sin las que no puede subsistir una cosa.*"

"*La [parte] que es necesaria para la integridad o totalidad del compuesto, pero no su esencia.*" *Diccionario de la Lengua Española* [17ª Ed., 1947]

being as follows: "Composed of constituent parts making a whole, as distinguished from the parts which are essential, without which a thing may not subsist." And the phrase "*parte integrante*" [1A] (integral part) is defined as "That [part] which is necessary to form a compound into a whole or totality, but which is not its essence." It seems clear that the bottles and the cases are not necessary parts in the composition of rum or for its integration or totality. They add nothing to the product and, we reiterate, nor are they constituent parts of the product. Petitioner uses the bottles and cases, but solely for the purpose of marketing its product [rum]. It argues, however, that the rum is not a finished product until after it is bottled and cased, since up to that moment it is not ready for the market. It takes the view that its finished product is that which is ready for the market, and that it does not consider its product as being ready for the market until it is bottled and cased. In other words, it argues that its finished product consists of the *rum* plus the bottles plus the cases, that its product as a whole is formed by these three articles, that the rum, the bottles and the cases are only the parts which form or make up the whole and that the product thus composed or integrated is its sole commercial article. Its reasoning is based on § 2 of the Act which defines as a finished product "that article *for commerce* which is obtained by combining two or more raw materials or submitting one or more of them to industrial processes, provided that in one or the other case predetermined methods are used and labor is used directly or indirectly." (Italics ours.) Petitioner is not correct. We have already seen that to obtain the exemption granted by law, it is not enough for a producer or manufacturer to produce an article for the market by uniting two or more raw materials, but that in addition it is necessary that the raw materials be used as an integral part of the finished product and that they become wholly and completely a part of the latter once the industrial process is completed. We

have already said that there is no such integration of the bottles and cases in connection with the rum. A contention precisely similar to the one raised by petitioner here was rejected by the Supreme Court of the United States in *Jos. Schlitz Brewing Co.* v. *United States*, 181 U. S. 584. That case dealt with a petition by a taxpayer for a drawback of duties it paid upon bottles and corks imported from Spain used in the manufacture of beer. Under the statute the drawback was allowed only when the imported article was used in the manufacture of articles produced in the United States. Petitioner's theory, according to the court's opinion, was to the effect that "bottled beer is really a different article from ordinary beer, and requires a process of manufacture in which bottles and corks are a material ingredient," arguing in its petition that the bottles and corks form a portion of the complete manufactured article known as "bottled beer." On rejecting said contention the court stated, at p. 588:

". . . Under the statute, the drawback is allowed only upon 'imported materials . . . used in the manufacture of articles manufactured or produced in the United States,' and subsequently exported. By this is undoubtedly meant that *the imported materials must enter into and form one of the ingredients of the manufactured article,* as did the hops and barley upon which the drawback was allowed, and properly allowed, by the Court of Claims. But the bottles and corks are not 'imported materials' at all, but finished products, and usable for any liquor which the importer may choose to put in them. *Neither are they ingredients used in the manufacture* of exported or any other kind of *beer,* in any proper sense of the term, but simply the packages which the manufacturer, for the purposes of export, sees fit, and perhaps is required, to make use of for the proper preservation of his product. Bottled beer is still beer, made of the same ingredients as ordinary beer, though made with greater care, and *to speak of the bottles and corks as ingredients of the beer is simply an abuse of language.*" (Italics ours.)

See also *Anheuser-Busch Assn.* v. *United States*, 207 U.S. 556. In the case at bar, similarly as in the *Schlitz* case, the taxpayer uses the bottles and cases, two finished products, to pack Bacardí rum—although any other liquor might be put in them—for the purpose of facilitating its exportation or sale.[2]

Furthermore, petitioner·destroys its own argument by admitting in its brief that other corporations which are also engaged in the rum industry do not sell their product in bottles and packed in cases but that, rather, they sell "in bulk." Hence, the rum need not be bottled and placed in cases to be ready for commercial intercourse, since other manufacturers do not sell the rum in that way. Therefore, it is evident that the rum, once redistilled is in itself a finished product, whole and complete, with all its constituents and ready for the market. , In *Glenmore Distilleries Co.* v. *Department of Revenue*, 279 Ky. 505, 131 S. W. 2d 460, plaintiff brought an action for declaratory judgment alleging that more than 1,500,000 gallons of whiskey, on which it had already paid the tax of five cents per gallon, were destroyed by fire, and, thus, sought a declaration to the effect that it could manufacture the same number of gallons without the payment of an additional production tax. The law imposed an excise tax of five cents "for each proof gallon of distilled spirits." On affirming the judgment dismissing the petition, the Court of Appeals of Kentucky said (131 S. W. 2d 460, 462) : "Undoubtedly the appellant did manufacture distilled spirits, for the manufacture of distilled spirits is complete when the distillation process is finished." And it stated further: "We may use our common knowledge and take judicial notice that whiskey is manufactured, and is a completed product, when it is placed in barrels." And the court thereafter affirmed that "the whiskey was a completed product when placed in the barrels, and much of it is in fact sold in that way." Similarly, rum is a complete

---

[2] See finding of facts number 4, *supra.*

product once it is put in barrels, aged and redistilled. As we stated before, petitioner itself admits that other distilleries sell the rum in that way and not in bottles and cases, which strengthens the finding of the lower court that the latter do not form an integral part of the rum. The bottles and cases can hardly become an integral part of a product which is already complete in itself. We hold, therefore, that rum is an "article for commerce," which may be used before it is bottled and packed in cases. We agree with the lower court that the bottles and cases are no more than an "accessory for the sale" of the finished product.[3] Undoubtedly, the article manufactured by petitioner is rum; it is the main article, to which are added the bottles and cases which are needed only after the product is finished and are used only as an aid or effective way to put the rum on the market. *Jos. Schlitz Brewing Co. v. United States, supra. Cf. City of Henderson v. George Delker Co., supra.*

We believe that although the industrial process of petitioner continues until the rum is bottled and packed in cases, the purpose of the rum industry is to manufacture rum. Subsequent packing and distribution may well be left—as other distilleries actually do—in the hands of other enterprises. Should we hold the contrary, absurd results might actually ensue. It could be held, for example, that the bottle caps are also exempted as an integral part of the rum, since without the caps the rum could become lost and thus could not reach the market. In *Poer v. Curry*, 8 So. 2d 418, 421, however, it was held that the bottle caps or crowns did not constitute an ingredient or component part of the soft drinks manufactured by the appellant in that case.

We conclude that the lower court did not commit any of the errors assigned by petitioner.

Therefore, the judgment appealed from will be affirmed.

---

[3] Act No. 30 of 1950 (Sess. Laws, p. 86) eliminated the exemption previously granted to raw material used as an "accesory" of another industrial product.