BACARDÍ CORPORATION OF AMERICA, peticionaria, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado; SECRETARIO DE HACIENDA DE PUERTO RICO, interventor.

Número 294.

*Sometido:* 5 de marzo de 1953. *Resuelto:* 30 de junio de 1953.

---

*Charles R. Hartzell, Rafael O. Fernández* y *José L. Novas,* abogados de la peticionaria; *Hon. Secretario de Justicia José Trías Monge (J. B. Fernández Badillo, Secretario de Justicia Interino,* en el alegato) y *Arnaldo P. Cabrera, Procurador Auxiliar,* abogados del interventor, querellado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del tribunal.

El Tesorero de Puerto Rico, hoy Secretario de Hacienda, impuso contribución sobre la propiedad para el año 1950–51, y como parte de la propiedad mueble de la Bacardí Corporation of America, a las botellas de cristal vacías y cajas de cartón usadas por dicha corporación en la industria de fabricación y venta de "Ron Bacardí". No conforme con dicha imposición la contribuyente apeló para ante el anterior Tribunal de Contribuciones. Se celebró un juicio en los méritos y el indicado tribunal dictó sentencia desestimando la demanda de la contribuyente, luego de formular las siguientes conclusiones de hecho:

"(1) La demandante Bacardí Corporation of America se dedica a la fabricación de ron. Su proceso industrial consiste (a) en disolver las mieles con agua y someterlas a fermentación después de agregarles ácido y levadura; (b) la destilación de las mismas una vez fermentadas; (c) el añejamiento del producto destilado en barriles de madera especial; (d) proceso y reposo o lo que se conoce por rectificación; y (e) filtración y embotellado el mismo día como un proceso continuo.

"(2) Comercialmente hablando el producto terminado de la demandante es 'ron Bacardí' que consiste de una botella con su tapa y una serie de etiquetas y sellos, puesta dicha botella dentro de una caja de cartón que dice 'Bacardí of America, Ron Bacardí.' Esta caja que comercialmente constituye la unidad de venta de la demandante contiene un número determinado de botellas de determinado tamaño y tipo, llenas del ron fabricado por ella.

"(3) Científicamente hablando el artículo industrial terminado de la demandante es ron al momento mismo de su embotellado, ya que en la botella el producto no sufre ningún otro proceso industrial ni hay procesos o intercambios químicos entre la botella y el ron.

"(4) La producción de la demandante se exporta en un 96 por ciento a Estados Unidos en su casi totalidad. En 1950 la demandante exportó hacia Estados Unidos el 42 por ciento de todo el ron que se fabricó en Puerto Rico. Las exportaciones se hicieron en unidades de cajas de ron.

"(5) La caja de cartón en que se meten las botellas así como la botella en donde se envasa el ron son en sí mismas productos terminados en el comercio. La demandante no produce o fabrica ni la una ni la otra.

"(6) La demandante no hace ventas de su producto en ninguna etapa o fase de su proceso industrial como corrientemente ocurre con otros elaboradores. Tampoco vende ron a granel, y el producto que pone en el comercio es el ron ya embotellado, con etiqueta y sellos y en caja.

"(7) Según la prueba pericial de la propia demandante la botella y la caja de cartón forman parte de su producto terminado como 'un accesorio para la venta.' La opinión pericial de ambas partes demostró que la botella y la caja resultan ser necesarias para vender el producto de la demandante debido a que su unidad de venta es una caja conteniendo botellas de ron y ella no vende en etapas intermedias durante el proceso o a granel, pero dicha caja y botella no son un componente del ron, no son un ingrediente del ron, no son elementos que aceleran el proceso o que lo modifican, y no son parte del ron desde el punto de vista de la ciencia.

"(8) Durante los años anteriores y desde 1945 el Tesorero de Puerto Rico no tributó las cajas y las botellas vacías en poder de la demandante."

La única cuestión a resolver en este recurso es si las susodichas botellas vacías y cajas de cartón constituyen "materia prima" a los efectos de la exención de la contribución sobre la propiedad que a dicha "materia prima" concede la Ley núm. 61 de 5 de mayo de 1945—Leyes de Puerto Rico de ese año, pág. 221—, según fué enmendada por la Ley núm. 30 de 30 de marzo de 1950—Leyes de ese año, pág. 87.

La citada Ley núm. 61, según enmendada, exime del pago de contribuciones sobre la propiedad a la "materia prima" que pueda garantizarse estar destinada a la producción de artículos terminados. En sus artículos 1 y 2, respectivamente, la propia ley define lo que se entiende por "materia prima" y "producto terminado" en la siguiente forma:

"Artículo 1.—A los efectos de esta Ley se entenderá por 'materia prima' no sólo los productos en su forma natural derivados de la agricultura o de las llamadas industrias extractivas, sino cualquier subproducto (*by-product*), cualquier producto parcialmente elaborado (*semi-manufactured*), o cualquier producto terminado, siempre y cuando que se utilice, bien como ingrediente o como parte integrante de otro producto industrial, de modo que al realizarse el proceso industrial, dicha 'materia prima' pase totalmente y por completo a formar parte del producto terminado, o se consuma por completo, se extinga totalmente, y deje de existir.

"Artículo 2.—Se entenderá por 'producto terminado' aquel artículo para el comercio que se obtenga uniendo dos o más materias primas o sometiendo una o más de éstas a procesos industriales, siempre que en uno u otro caso se usen métodos predeterminados, y se aplique mano de obra en forma directa o indirecta."

No hay duda alguna de que conforme a los citados preceptos legales, un *producto terminado* puede ser considerado, como materia prima a los fines de la exención contributiva. Mas para que tal *producto terminado* pueda ser así considerado, es necesario que el mismo se utilice, bien como ingrediente o como parte integrante de otro producto industrial

de modo que al realizarse el proceso industrial, dicha "materia prima" [producto terminado] pase totalmente y por completo a formar parte del producto terminado, o se consuma por completo, se extinga totalmente y deje de existir. De suerte pues que para gozar de exención contributiva no basta con que la "materia prima" cuando ésta es un producto terminado, se utilice como ingrediente o como parte integrante de otro producto industrial, sino que además, al ser así utilizada dicha "materia prima", deberá, al realizarse el proceso industrial, (1) pasar totalmente y por completo a formar parte del producto terminado, o (2.) consumirse por completo, extinguirse totalmente y dejar de existir.

 La peticionaria alega que las botellas vacías y cajas de cartón se utilizan como parte integrante de su producto "Ron Bacardí" y que además pasan totalmente y por completo a formar parte de dicho producto, y que por lo tanto, las dichas botellas y cajas, gozan de la gracia legislativa como "materia prima". En otras palabras, arguye que su producto terminado es "Ron Bacardí" y que tal producto se obtiene uniendo el producto terminado *ron* y el producto terminado *botellas* y *cajas*.([1])

No tiene razón. El lenguaje usado por la Ley núm. 61, cuando fué aprobada originalmente, era lo suficientemente amplio como para incluir las botellas y las cajas dentro del concepto "materia prima". Disponía así dicha ley:

"Artículo 1.—A los efectos de esta Ley se entenderá por 'materia prima' no sólo los productos en su forma natural derivados de la agricultura o de las llamadas industrias extractivas, sino cualquier subproducto (*by-product*), cualquier producto

---

([1]) La peticionaria acepta como correctas todas las conclusiones de hecho del tribunal sentenciador, excepto la séptima. Sostiene que el ron no es el producto terminado a que se refiere el artículo 2 de la Ley núm. 61, según ha sido enmendada. En su alegato se expresa así: "Asumimos que el ron es en sí un *producto terminado* solamente a los fines de la argumentación de este error, ya que es nuestra posición que no reune tal condición el ron sin embotellar pues no puede así entrar al comercio de los hombres, es decir, no está en condiciones de poder ser ofrecido al último consumidor para los fines que éste lo destina."

parcialmente elaborado (*semi-manufacture*), o cualquier pro-ducto terminado, siempre y cuando que se utilice, bien como ingrediente en la manufactura de otro producto industrial o como accesorio o parte integrante del dicho otro producto industrial."

Fué bajo esta disposición legal que el anterior Tribunal de Contribuciones resolvió en 10 de noviembre de 1949, en el caso de *J. R. Nieves & Cía.* v. *Tesorero,* 6 D.T.C. 53, que los barriles o toneles donde se envejecía el ron estaban exentos del pago de contribuciones sobre la propiedad. Dicha decisión se fundó en que la prueba había demostrado que se operaban reacciones químicas entre el barril y el ron que eran necesarias en el proceso industrial para la elaboración del producto, siendo dichos barriles utilizados en parte como ingredientes y en parte como accesorios del ron. Considerando el legislador que esta decisión abría una puerta de escape hacia la exención contributiva a una lista interminable de productos o materias, decidió cerrarla un poco aunque conservando la intención de estimular la industria y a ese fin procedió a enmendar la ley restringiendo la definición de "materia prima". Según se desprende de las Actas de la Cámara de Representantes, la enmienda propuesta y aprobada tenía el propósito de cubrir dos aspectos fundamentales, a saber: (*a*) Eliminar la frase "o como accesorio", y (*b*) "Añadir una disposición de que para ser eximible el producto o materia debe desaparecer o consumirse pasando a formar parte integrante del artículo terminado. La idea es excluir toneles y otras máquinas o accesorios." Actas de la Cámara de Representantes del año 1950, pág. 383; *Descartes* v. *Tribunal de Contribuciones y Suárez,* 74 D.P.R. 274. La enmienda anuló prospectivamente los efectos de la decisión en el caso de *J. R. Nieves,* supra. Si bien puede concederse que aun los toneles se utilizan como ingredientes del producto industrial—ron—lo cierto es que dichos toneles no pasan totalmente y por completo a formar parte de tal producto industrial. Es obvio que las botellas y las cajas no se utilizan

como un ingrediente del ron. *Cf. Smith Oil & Refining Co. v. Department of Finance*, 371 Ill. 405, 21 N.E.2d 292. También es obvio y es innecesario elaborar un argumento para demostrar lo contrario, que las botellas ni las cajas se consumen por completo, se extinguen totalmente y dejan de existir cuando se realiza el proceso industrial de embotellar el ron primero y luego al embalar las botellas en las cajas. La peticionaria alega, sin embargo, que las botellas y cajas se utilizan como parte integrante del ron Bacardí y que al realizarse el proceso industrial [embotellamiento y embalaje] las mismas pasan totalmente y por completo a formar parte de aquel producto terminado. Arguye que "La integración a que se refiere el artículo 1 es la integración corpórea o estructural, es decir, la unión de dos materias primas que ya son productos terminados para formar un producto industrial. El líquido "ron" no es susceptible de ser manejado en forma alguna a menos que tenga un continente que lo integre y le dé una forma que permita su manipulación; la botella le da forma al ron en el sentido de integración estructural, crea una estructura en la que queda aprisionado el líquido *ron*, haciéndole así susceptible de manipulación. En tal sentido es que se *usa* la botella ya que como tal continente nunca pierde su individualidad pero se queda acoplada al otro producto terminado *ron* que se sirve de sus propiedades como botella." Este argumento, aunque bien elaborado, no es decisivo. [3] Las exenciones contributivas han de ser interpretadas estrictamente, *Asociación de Maestros* v. *Sancho Bonet, Tes.*, 54 D.P.R. 536, 540; y una interpretación de la ley en la forma que lo hace la peticionaria, sería extender los límites de la exención. Veamos. Existe una primera dificultad en determinar lo que se entiende por *parte integrante*. [4] En ausencia de una definición en el estatuto, de ordinario le daremos a una frase la significación común y ordinaria, *Puerto Rico Ilustrado* v. *Buscaglia, Tes.*, 64 D.P.R. 914; *Old Colony R. Co.* v. *Commissioner*, 284 U.S. 552, 560, aunque en estatutos que conceden una exen-

ción contributiva, la misma frase tiene que ser interpretada aún más restrictivamente, *City of Henderson* v. *George Delker Co.*, 235 S.W. 732, por la razón de hermenéutica legal ya apuntada.

No podemos convenir con la peticionaria en que las botellas y cajas se utilizan como parte integrante del ron que contienen. De acuerdo con el Diccionario de la Lengua Española (17ª Ed., 1947) la palabra "integrante" se define igual que la palabra "integral" en su primera acepción, siendo la definición de esta última palabra la siguiente: "Aplícase a las partes que entran en la composición de un todo, a distinción de las partes que se llaman esenciales, sin las que no puede subsistir una cosa." Y la frase "parte integrante" se define como "La [parte] que es necesaria para la integridad o totalidad del compuesto, pero no su esencia." Nos parece claro que las botellas y cajas no son necesarias para la composición del ron o para la integridad o totalidad del mismo. Nada añaden a dicho producto y repetimos que tampoco entran en su composición. El propósito con que la peticionaria utiliza las botellas y cajas no es otro que el de poder llevar su producto [ron] al mercado. Sin embargo, ella arguye, que el ron no es un producto terminado hasta que es embotellado y envasado en cajas puesto que no es hasta entonces que puede entrar al comercio de los hombres. Su posición es al efecto de que su producto terminado es aquél que está listo para el comercio y que para ella, su producto no está listo para el comercio hasta que está embotellado y envasado. En otras palabras, que su producto terminado está compuesto por el *ron* más las botellas, más las cajas; que estos tres artículos son los que componen el todo; que el ron, botellas y cajas son sólo las partes que componen o integran el todo y que ese todo así compuesto o integrado es su único artículo para el comercio. Fundamenta su razonamiento en el artículo 2 de la ley que define como producto terminado "aquel artículo *para el comercio* que se obtenga uniendo dos o más materias primas o sometiendo una o más de éstas a

procesos industriales, siempre que en uno u otro caso se usen métodos predeterminados, y se aplique mano de obra en forma directa o indirecta." (Bastardillas nuestras.) No le asiste la razón. Ya hemos visto que no basta con que un productor o manufacturero produzca un artículo para el comercio uniendo dos o más materias primas para acogerse a la exención de ley, sino que además es necesario que dichas materias primas se utilicen como parte integrante del producto terminado y que pasen totalmente y por completo a formar parte de éste al realizarse el proceso industrial. Ya hemos dicho que tal cosa no ocurre con las botellas y cajas en relación con el ron. Precisamente, una contención similar a la levantada por la peticionaria fué rechazada por la Corte Suprema de los Estados Unidos en el caso *Jos. Schlitz Brewing Co.* v. *United States*, 181 U.S. 584. Se trataba en ese caso de una reclamación de la contribuyente para que se le reintegraran ciertos derechos de aduanas pagados por ella sobre botellas y tapones de corcho que importó de España para usarlas en la manufactura de cerveza. La ley autorizaba tal devolución cuando el artículo importado fuera utilizado en la manufactura de artículos producidos en Estados Unidos. La teoría de la peticionaria, según reza la opinión, era al efecto de que "la cerveza embotellada es en realidad un artículo diferente de la cerveza corriente, que aquélla requiere un proceso de manufactura del cual las botellas y tapones de corcho son un ingrediente material," argumentando en su petición que las botellas y tapones de corcho forman una porción del artículo completo manufacturado conocido por "cerveza embotellada". Al rechazar tal contención dijo la Corte, a la pág. 588:

"De acuerdo con el estatuto, se permite el reintegro tan sólo en cuanto a 'materiales importados . . . . . que se usen en la elaboración de artículos manufacturados o producidos en los Estados Unidos' y que subsiguientemente se exportan. Quiérese decir con ésto, indudablemente, que *los materiales importados deben formar parte y ser uno de los ingredientes del*

*artículo manufacturado,* como lo fueron el lúpulo y la cebada, en cuanto a las cuales la Corte de Reclamaciones permitió, muy propiamente, el reintegro. Mas las botellas y los tapones de corcho no son, en forma alguna, 'materiales importados' y sí productos terminados que puede el importador usarlos para envasar con ellos cualquier licor que elija. *Tampoco son ingredientes usados en la manufactura de cerveza* exportada o de cualquier otra clase de cerveza, en el sentido propio del término, y sí sencillamente, envases que el manufacturero halla adecuados para fines de exportación, y que quizás sean necesarios usar para la debida conservación del producto. La cerveza embotellada es aún cerveza, hecha de los mismos ingredientes que la cerveza corriente, aunque con mayor cuidado, y *hablar de botellas y corchos como ingredientes de la cerveza es sencillamente un abuso del lenguaje."* (Bastardillas nuestras.)

Véase, también, *Anheuser-Busch Assn.* v. *United States,* 207 U.S. 556. En el caso ante nos, al igual que en el de *Schlitz,* la contribuyente usa las botellas y cajas, dos productos terminados, para envasar el Ron Bacardí—aunque podría envasar cualquier otro licor—con el propósito de facilitar la exportación o venta del mismo.(²)

Por lo demás, la misma peticionaria derrota su argumentación cuando admite en su alegato que otras empresas que se dedican a la misma industria del ron no venden su producto embotellado y envasado en cajas sino que, antes bien, lo venden "a granel". Luego, no es necesario que el ron esté embotellado y en cajas para que sea susceptible de entrar al comercio de los hombres, puesto que otros productores no venden el ron de esa manera. Por tanto, resulta patente que el ron, una vez rectificado es en sí un producto terminado, íntegro y total, con todos sus componentes y listo para el comercio. En *Glenmore Distilleries Co.* v. *Department of Revenue,* 279 Ky. 505, 131 S.W.2d 460, la demandante solicitó una sentencia declaratoria alegando que más de 1,500,000 galones de *whiskey,* sobre los que ya había pagado el impuesto de cinco centavos por galón habían sido des-

(²) Véase la conclusión de hechos número 4, supra.

truídos por un fuego, por lo que suplicaba se declarara que ella podía volver a producir esa misma cantidad sin tener que pagar impuesto alguno. La ley imponía un arbitrio de cinco centavos "por cada galón de espíritus destilados". Al confirmar la sentencia que declaró sin lugar la demanda, dijo la Corte de Apelaciones de Kentucky (131 S.W.2d 400, 462): "Indudablemente, la apelante manufacturó espíritus destilados, pues la manufactura de espíritus destilados está completa al finalizar el proceso de destilación" y continuó más adelante: "Podemos usar nuestro conocimiento común y tomar conocimiento judicial de que el *whiskey* es manufacturado y es un producto completo, cuando es echado en barriles." Y afirmó después que "el *whiskey* era un producto completo cuando fué puesto en barriles y que gran parte del mismo es, en efecto, vendido en esa forma." De la misma manera, el ron es un producto completo una vez puesto en barriles, envejecido y rectificado. Como señalamos antes, la misma peticionaria admite que otras licorerías venden el ron en esa forma y no en botellas y cajas, lo cual fortalece la conclusión del tribunal inferior de que las mismas no forman parte integrante del ron. Mal pueden las botellas y cajas integrar un producto que ya es íntegro en sí. Sostenemos pues, que el ron es un "artículo para el comercio", que puede ser usado antes de su embotellamiento y envasado en cajas. Convenimos con el tribunal inferior en que las botellas y cajas no son más que un "accesorio para la venta" del producto terminado.([3]) Sin dudas, el artículo que produce la peticionaria es el ron, que resulta ser lo principal, y a éste se le añaden las botellas y cajas, las cuales se necesitan solamente después de que el producto está terminado y se utilizan sólo como una ayuda o medio efectivo de hacer llegar el ron al comercio. *Jos. Schlitz Brewing Co.* v. *United States*, supra. *Cf. City of Henderson* v. *George Delker Co.*, supra.

([3]) La Ley núm. 30 de 1950 eliminó la exención de la materia prima usada como "accesorio" de otro producto industrial.

142

Creemos que aunque el proceso industrial de la peticionaria continúe hasta el embotellamiento del ron y su envase en cajas el propósito de la industria del ron es fabricar ese producto. Su envase posterior y distribución bien puede dejarse—como en efecto hacen algunas licorerías—en manos de otras empresas. Si sostuviéramos lo contrario, se podría, en realidad, llegar a resultados absurdos. Podría sostenerse, por ejemplo, que las tapas de las botellas también están exentas como parte integrante del ron pues sin éstas el mismo se perdería y no podría llevarse al comercio. En *Poer* v. *Curry*, 8 So.2d 418, 421, se resolvió, sin embargo, que las tapas o coronas de las botellas no constituyen un ingrediente o parte integrante de las bebidas refrescantes manufacturadas por la allí apelante.

Concluimos que el tribunal inferior no cometió ninguno de los errores que le imputa la peticionaria.

*Por tanto la sentencia recurrida será confirmada.*