Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Madeline Sánchez Díaz, et al.<br><br>        Peticionarios<br><br>              v.<br><br>Estado Libre Asociado de Puerto Puerto Rico (Departamento de Justicia), et al.<br><br>        Recurridos | Certiorari<br><br>2011 TSPR 68<br><br>181 DPR \_\_\_\_ |

Número del Caso:  CC          - 2009 - 1080
                              Cons. AC    - 2010 - 2

Fecha: 4 de mayo de 2011

Tribunal de Apelaciones:

          Región Judicial de San Juan Panel III

Jueza Ponente:
          Hon. Zadette Bajandas Vélez

Abogados de la Parte Peticionaria:

          Lcdo. Eduardo Vera Ramírez
          Lcda. María Santiago Ramos
          Lcda. Rebecca Martínez Jiménez

Abogados de la Parte Recurrida:

          Lcdo. Eliezer Aldarondo Ortiz
          Lcda. Rosa Campos Silva
          Lcdo. Simone Cataldi Malpica
          Lcdo. Eliezer A. Aldarondo López

Materia:    Solicitud de Injuction Preliminar y Permanente por violación de Derechos Constitucionales, Sentencia Declaratoria y Daños y Perjuicios

Este documento constituye un d          ocumento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Madeline Sánchez Díaz, *et al.*
　　　Peticionarios


　　　　　v.

Estado Libre Asociado de
Puerto Rico (Departamento de
Justicia), *et al.*
　　　Recurridos

CC-2009-1080
cons. con

AC-2010-2


Opinión del Tribunal emitida por la Jueza Asociada SEÑORA FIOL MATTA



En San Juan, Puerto Rico, a 4 de mayo de 2011.

Nuevamente debemos interpretar el alcance de las enmiendas al plan de cesantía implementado por la Ley Núm. 7 de 9 de marzo de 2009, mejor conocida como *Ley Especial Declarando Emergencia Fiscal y Estableciendo Plan Integral de Estabilización Fiscal para Salvar el Crédito de Puerto Rico* (la Ley 7). En particular, nos corresponde examinar si erró el Tribunal de Apelaciones al resolver que el Tribunal de Primera Instancia actuó sin jurisdicción cuando concluyó que las peticionarias estaban excluidas del plan de cesantía, por razón de pertenecer al personal del Registro de la Propiedad de Puerto Rico.

## I.

El 22 de octubre de 2009 Madeline Sánchez Díaz, junto a otras dos empleadas del Registro de la Propiedad, Lucila Flores Rivera e Ivette López Ortiz, instó una acción civil solicitando *injunction* preliminar contra el Estado Libre Asociado de Puerto Rico (el ELA) por razón de haber sido cesanteada de su puesto en virtud de la Ley 7. La parte demandante reclamó que no procedía su cesantía, ya que la Ley Núm. 37 de 10 de julio de 2009 había enmendado el Artículo 37.02 de la Ley 7 a los efectos de excluir el personal del Registro de la Propiedad del plan de cesantía. El ELA adujo que dicha disposición no resguardaba el empleo de la señora Sánchez Díaz debido a que su clasificación de empleo, Técnico de Sistemas de Oficina I, no era esencial. También levantó como defensa que el foro primario carecía de jurisdicción para adjudicar la controversia porque la Ley 7 le confirió jurisdicción exclusiva a la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (la CASARH) para atender cualquier asunto relacionado a las cesantías.

Finalizadas las vistas, el Tribunal de Primera Instancia emitió, el 30 de octubre de 2009, una sentencia parcial en la cual decretó que las actuaciones de la parte demandada fueron *ultra vires* y, por tanto, las cartas de cesantía notificadas a las demandantes eran nulas e inoficiosas. La juzgadora del foro primario razonó que, por tratarse de un asunto de estricta interpretación del

derecho, la adjudicación de dicho asunto no requería la pericia de la agencia administrativa. También concluyó que los miembros del personal del Registro de la Propiedad fueron incluidos de forma expresa en la lista de empleados exentos del proceso de cesantía del Artículo 37.02 de la Ley 7, según enmendada.

Inconforme, el ELA presentó ante el Tribunal de Apelaciones un recurso de apelación en el cual señaló que el foro primario había errado al asumir jurisdicción sobre el caso cuando le correspondía atenderlo exclusivamente a la CASARH, como también al concluir que todo el personal del Registro de la Propiedad estaba excluido de la aplicación de la Ley 7. El 13 de noviembre de 2009 el foro apelativo revocó la sentencia parcial del foro primario y desestimó la demanda presentada. Concluyó que el pleito versaba sobre el principio de mérito y que la Ley 7 le confería a la CASARH jurisdicción primaria exclusiva sobre los asuntos de los empleados públicos cesanteados a tenor con dicho estatuto.

Posteriormente, la señora Sánchez Díaz presentó ante este Tribunal una petición de *certiorari* solicitando que se revocara el dictamen del foro apelativo. Adujo que éste erró al: *a*) determinar que el Tribunal de Primera Instancia carecía de jurisdicción para atender los despidos decretados por la Ley 7 en casos donde la controversia se limita a un asunto de estricta interpretación estatutaria sobre la exclusión de ciertos grupos; *b*) determinar que el Tribunal de Primera Instancia carecía de jurisdicción para entender

en los despidos decretados bajo la Ley 7 cuando se han alegado violaciones específicas a derechos constitucionales; *c*) determinar que el pleito versaba sobre el principio de mérito; *d*) determinar que no procedía un *injunction* preliminar y *e*) determinar que las peticionarias no estaban expresamente excluidas del plan de cesantía bajo la Ley 7, en contravención a la propia letra e intención legislativa de dicho estatuto.

Coetáneamente con la presentación de su demanda ante el foro primario, y bajo el mismo fundamento sobre la exclusión del personal del Registro de la Propiedad, la señora Sánchez Díaz radicó una apelación ante la CASARH con el fin de impugnar su cesantía. Luego de varios trámites procesales, el 24 de marzo de 2010, la CASARH emitió una Resolución en la cual declaró no ha lugar a la apelación presentada.[1] Más tarde, el 18 de noviembre de 2010, el ELA presentó una moción ante este Tribunal solicitando la desestimación de la reclamación instada por la peticionaria Sánchez Díaz. En esa instancia alegó que por concurrir identidad entre la cosa, causa y partes de este reclamo, junto a que la determinación administrativa advino final y firme, se debe aplicar la doctrina de cosa juzgada.

De forma paralela a la señora Sánchez Díaz, Humberto Martínez Ortiz, junto a otros 24 empleados del Registro de

---

[1] La Resolución de la CASARH nada resuelve en cuanto a la exclusión establecida por el Artículo 37.02 de la Ley 7. En efecto, la misma sólo versa sobre la re-certificación de la antigüedad de la señora Sánchez Díaz, computada en 7 años, 7 meses y 29 días.

la Propiedad, presentó ante el Tribunal de Primera Instancia una demanda similar contra el ELA solicitando los mismos remedios que en la primera demanda, a tenor con las enmiendas al Artículo 37.02 de la Ley 7. El foro primario emitió una sentencia, el 26 de octubre de 2009, en la cual dictaminó que la CASARH era el foro con jurisdicción exclusiva para atender cualquier asunto surgido de la impugnación de la Ley 7, no limitándose a la impugnación de las cesantías sino con referencia a todos los derechos de los empleados afectados por ella. De esta forma, el foro primario desestimó la demanda por falta de jurisdicción y refirió a los demandantes al foro pertinente, es decir, la CASARH.

Inconformes, los demandantes presentaron una petición de *certiorari* ante el Tribunal de Apelaciones y plantearon unos señalamientos de error similares a los del primer caso ante nuestra consideración. Sin embargo, el foro apelativo confirmó el dictamen del Tribunal de Primera Instancia y la parte demandante procedió a presentar un recurso de apelación civil ante este Tribunal.

El 4 de junio de 2010 este Tribunal emitió una *Resolución* en la cual se consolidó el caso del señor Martínez Ortiz, y otros empleados, con el de la señora Sánchez Díaz por versar ambos pleitos sobre la misma controversia.[2] Sin embargo, luego de varias conversaciones

---

[2] La petición de *certiorari* de la señora Sánchez Díaz fue expedida el 21 de mayo de 2010, mientras que el recurso de

transaccionales encaminadas a finiquitar las controversias, el 13 de septiembre de 2010, el señor Martínez Ortiz y otros demandantes del segundo caso presentaron ante este Tribunal una moción solicitando el desistimiento con perjuicio y la renuncia a la representación legal en su caso. La única demandante que permaneció en esa acción civil, ya que no aceptó los términos y condiciones propuestos en el acuerdo transaccional, fue la señora Anca Santiago.

Nuevamente, el 15 de octubre de 2010 emitimos una *Resolución* en la cual le concedimos a la señora Sánchez Díaz un término de 30 días para presentar su alegato, so pena de desestimación; mientras que a la señora Anca Santiago le concedimos un término similar para informar su nueva representación legal. Al día de hoy solamente la señora Sánchez Díaz ha cumplido con nuestros requerimientos, ya que presentó oportunamente una moción informativa acogiéndose a la Regla 33(k) de nuestro Reglamento.[3] Sin embargo, ésta presentó posteriormente ante este Tribunal una moción informativa sobre desistimiento por acuerdo transaccional,

---

apelación civil de la señora Anca Santiago, acogido como *certiorari*, lo fue el 4 de junio de 2010.

[3] "Cualquier parte que haya sometido una petición o moción fundamentada con relación a la expedición de un auto podrá someter el asunto sin necesidad de presentar un alegato. Deberá hacerlo constar así en una moción informativa, y la fecha de presentación y notificación de dicha moción será equivalente para todos los fines pertinentes a la fecha de presentación y notificación del alegato. No obstante lo anterior, el Tribunal podrá ordenar que se prepare y someta un alegato en cualquier caso que lo considere necesario". 4 L.P.R.A. Ap. XXI-A, R. 33(k).

cuyo efecto fue finiquitar la causa de acción presentada por ella mas no la de las dos peticionarias restantes.[4]

Examinados los casos consolidados y contando con la comparecencia de la parte demandada, procedemos a resolver.

## II.

Concretamente, la Ley 7 establece, entre otros asuntos, un plan de emergencia de reducción de gastos por parte del Gobierno del Estado Libre Asociado de Puerto Rico. Mediante el Artículo 37 se instituyó la segunda fase del plan de reducción de gastos, la cual conllevó cesantías involuntarias para la eliminación de puestos. Esta fase sería aplicable, con determinadas excepciones, a todas las agencias de la Rama Ejecutiva del Gobierno.[5]

---

[4] La moción informativa es clara en cuanto a que dicha transacción surtía el efecto de desistir de la causa de acción "única y exclusivamente para la demandante aquí compareciente, Madeline Sánchez Díaz". Moción Informativa sobre Desistimiento por Acuerdo Transaccional, 28 de febrero de 2011. Por otro lado, debemos resaltar que posteriormente recibimos una moción informativa adicional informando un acuerdo transaccional similar celebrado entre Lourdes Laclaustra De Jesús y el Estado Libre Asociado de Puerto Rico. Moción Informativa sobre Desistimiento por Acuerdo Transaccional, 19 de abril de 2011. Sin embargo, no surge del expediente que dicha persona sea parte del caso de epígrafe, por lo cual la tomamos por no puesta.

[5] "Este Capítulo III será de aplicación a todas las Agencias cuyo presupuesto se sufraga, en todo o en parte, con cargo al Fondo General a la fecha de vigencia de esta Ley. Estarán exentas de la aplicación de esta Ley las ramas judicial y legislativa, así como las agencias de gobierno e instrumentalidades gubernamentales excluidas por el Artículo 5, Sección 5.3 de la Ley Núm. 184 de 3 de agosto de 2004, según enmendada; conocida como la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico; disponiéndose, no obstante, que estará sujeta a la aplicación de esta Ley la Oficina

Más allá de la aplicabilidad del plan de cesantía, la Ley 7 también dispuso, en su Artículo 37.02, ciertas excepciones a dicho plan con el fin de minimizar el impacto negativo a los servicios brindados por el Gobierno en las áreas relacionadas con la protección de la seguridad, enseñanza, salud y bienestar. El Artículo 37.02 inicialmente mencionaba un número limitado de puestos exentos de las referidas cesantías involuntarias.[6] Luego, el 19 de junio de 2009, las Comisiones de Hacienda y Gobierno de la Cámara de Representantes de Puerto Rico presentaron ante dicho cuerpo legislativo el Informe Positivo sobre el P. de la C. 1640. En ese Informe ambos cuerpos realizaron una extensa evaluación de la Ley 7 y presentaron "una serie de enmiendas adicionales a la medida **con el fin de promover el desarrollo económico y proteger ciertos empleos en el sector público de alta importancia para el servicio de la ciudadanía**".[7] (Énfasis nuestro). Acto seguido, el 10 de julio de 2009, se aprobó la Ley Núm. 37 para enmendar el Artículo 37.02 a los fines de ampliar la lista de los puestos exentos del plan de cesantías involuntarias. La nueva ley adicionó, entre otros, al personal del Registro de la Propiedad de Puerto Rico.[8]

---

propia del Gobernador". Artículo 34 de la Ley Núm. 7 de 9 de marzo de 2009.

[6] Los empleados del Registro de la Propiedad no aparecían específicamente mencionados en ese listado inicial.

[7] Informe Positivo sobre el P. de la C. 1640, de 19 de junio de 2010, pág. 16.

---

[8] "Sección 40. Se enmienda el Artículo 37.02 de la Ley Núm. 7 de 9 de marzo de 2009, para que se lea como sigue:

'Artículo 37.02.-Exclusión de la aplicación de la Fase II.

**A fin de evitar un impacto negativo en los servicios brindados por el Gobierno** y en cumplimiento con Io dispuesto en el Artículo 2 de esta Ley, **estarán exentos de las cesantías de la presente ley los empleados de las Agencias que según sus clasificaciones llevan a cabo funciones esenciales en protección de la seguridad, enseñanza, salud y bienestar**, según serán definidos por la JREF, tales como:

(a) policías y bomberos, agentes del Cuerpo de Vigilantes, agentes del Negociado de Investigaciones Especiales y la Oficina del Fiscal Especial Independiente;

(b) oficiales de corrección y oficiales juveniles;

(c) maestros asignados al salón de clases, incluyendo los transitorios durante el año escolar;

(d) Directores, bibliotecarios, orientadores y empleados de comedores adscritos al Departamento de Educación;

(e) maestros del Conservatorio de Música de Puerto Rico y de la Escuela de Artes Plásticas;

(f) profesionales de la salud (médicos, paramédicos, enfermeras, farmacéuticos y técnicos de laboratorio);

(g) trabajadores sociales,

(h) operadores del sistema de llamadas de emergencia 911;

(i) patólogos, personal pericial y técnico del Instituto de Ciencias Forenses;

(j) empleados de la Comisión de Relaciones del Trabajo del Servicio Público y la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público;

(k) Personal de la Oficina de Servicios con Antelación a Juicio;

(l) **Personal del Registro de la Propiedad;**

(m) Personal de la Junta de Libertad Bajo Palabra; y

Hemos atendido recientemente otras controversias relacionadas a los grupos de empleados que están exceptuados del plan de cesantía de la Ley 7. En <u>Negrón Matos v. ELA</u>, res. de 9 de junio de 2010, 2010 T.S.P.R. 86, decidimos que la parte demandante, compuesta por diversos empleados de la Administración de Instituciones Juveniles (la AIJ), no estaba excluida del plan de cesantía. En aquella instancia los peticionarios argumentaron que la AIJ, como agencia, quedó excluida de la Fase II, ya que el Artículo 37.02(b) incluía a "oficiales de corrección y oficiales juveniles". Este Tribunal dictaminó que, en aras de proteger ciertos empleos en el sector público de alta importancia para el servicio de la ciudadanía, la citada disposición de la Ley 7, según enmendada, sólo excluía a ciertos empleados a base de sus clasificaciones, y no a la agencia por completo.

Luego, en <u>Báez Rodríguez v. Gobernador</u>, res. de 9 de junio de 2010, 2010 T.S.P.R. 87, confirmamos el *ratio* de <u>Negrón Matos</u> al concluir que los demandantes sí estaban excluidos del plan de cesantía, no por ser empleados del Instituto de Ciencias Forenses, sino por razón de llevar a cabo funciones técnicas y de peritaje expresamente excluidas por el Artículo 37.02. Esto, conforme al historial legislativo del estatuto que revela, en parte, que "el legislador entendió necesario aumentar las exenciones a ciertos puestos que son esenciales para el funcionamiento de

---

(n) Consejeros en Rehabilitación Vocacional y personal de apoyo técnico...". (Énfasis nuestro).

nuestro sistema de gobierno".[9] De esta forma, reconocimos en dicha ocasión que al enmendar el Artículo 37.02 "el legislador salvaguardó los servicios esenciales del gobierno, ya sea mediante exclusión estatutaria expresa o mediante la determinación que haga la Junta de Reestructuración y Estabilización Fiscal (la JREF) sobre otros empleados no excluidos expresamente en la referida disposición".[10]

También atendimos en Báez Rodríguez lo referente a la jurisdicción delegada a la CASARH. Aclaramos que la Ley 7 sólo sustrajo de la jurisdicción ordinaria de los tribunales de justicia aquellas controversias relacionadas a la antigüedad en sus empleos de los empleados sancionados y dispusimos que cuando la controversia planteada no se relacione estrictamente a esta causa de impugnación, los tribunales de justica tendrán autoridad para ejercer su facultad jurisdiccional.[11] Ello nos permite resolver, de entrada, que las peticionarias tienen razón al alegar que el foro apelativo no debió negarle jurisdicción al Tribunal de Primera Instancia para atender su reclamo de exención estatutaria. Este caso no versa sobre el principio de mérito, como tampoco está en controversia el cómputo de la antigüedad en el empleo de la señora Sánchez Díaz. Aquí es claro que la parte demandante impugna su cesantía basándose

---

[9] Báez Rodríguez v. Gobernador, res. de 9 de junio de 2010, 2010 T.S.P.R. 87.

[10] Íd.

[11] Íd.

única y exclusivamente en que la letra del Artículo 37.02(l) resguarda expresamente su puesto de los efectos de la Fase II de la Ley 7.[12]

### III.

Ahora bien, ya dispuestas las controversias anteriores, procedemos a atender los demás errores alegados, todos los cuales se refieren al significado del texto legislativo sobre la exclusión del personal del Registro de la Propiedad de los efectos de la Ley 7.

En nuestra jurisdicción las normas básicas de interpretación gozan de rango estatutario. El Artículo 14 del Código Civil de Puerto Rico dirige al juzgador a no menospreciar la letra de la ley, bajo el pretexto de cumplir con su espíritu, cuando ésta es clara y libre de toda ambigüedad.[13] También por mandato estatutario nos vemos obligados a entender el lenguaje de una ley en su "más corriente y usual significación" atendiendo con prioridad el uso general y popular de las voces, ya que se presume que el legislador ha utilizado las palabras en su acepción común.[14] Por tanto, y como ejercicio de autodisciplina judicial, el

---

[12]  En cuanto al señalamiento del ELA sobre la aplicabilidad de la doctrina de cosa juzgada para con la señora Sánchez Díaz, al haber ésta desistido del presente caso, y por ser la única peticionaria que compareció ante la CASARH para impugnar su cesantía conforme al Artículo 37.02 de la Ley 7, supra, el mismo no debemos atenderlo.

[13]  31 L.P.R.A. sec. 14.

[14] 31 L.P.R.A. sec. 15.  Véase, además, Bird v. Eastern Airlines, 99 D.P.R. 955 (1971); Coop. de Cafetaleros v. La Capital, 82 D.P.R. 51 (1961); Bull Insular Line v. Sancho Bonet, 53 D.P.R. 865 (1938).

tribunal no puede añadir o eliminar condiciones en una ley que no surgen de su redacción. A su vez, esto requiere de los tribunales de justicia el mayor grado de disciplina al aplicar una ley, para evitar sustituir el criterio del legislador por convicciones o creencias que pueda tener el juez.[15]

Igualmente hemos señalado, como norma general, que para interpretar correctamente una ley es necesario estudiarla y analizarla como un íntegro, ya que la lectura aislada y desconectada de porciones de una ley podría dar lugar a confusión.[16] Resulta, pues, necesario que en nuestra labor interpretativa armonicemos, hasta donde sea posible, todas las disposiciones de una ley con el propósito de lograr auscultar integrada, lógica y razonablemente la intención legislativa. Todo ello sin olvidar que las reglas de interpretación no son más que guías que ayudan al juzgador a esclarecer los fines del estatuto y no pueden utilizarse si el resultado contravendría la intención del legislador.[17]

Si bien es cierto que en Negrón Matos decidimos que ni el texto original, ni el enmendado, del Artículo 37.02 consideró excluir a todos los empleados de la agencia

---

[15] Dpto. Estado v. U.G.T., 173 D.P.R. 93, 110 (2008); Guzmán v. Calderón, 164 D.P.R. 220, 256-257 (2005); Mun. de San Juan v. Banco Gub. Fomento, 140 D.P.R. 873, 884 (1996); Clínica Juliá v. Sec. de Hacienda, 76 D.P.R. 509, 521 (1954).

[16] A.R.P.E. v. Ozores Pérez, 116 D.P.R. 816, 820 (1986); Delgado v. D.S.C.A., 114 D.P.R. 177, 182 (1983); Cirino v. Fuentes Fluviales, 91 D.P.R. 608, 616 (1964).

[17] Íd.

concernida, y que en <u>Báez Rodríguez</u> enfatizamos la protección estatutaria a los puestos que realizan funciones esenciales, no es menos cierto que en aquellas instancias interpretamos dos incisos que claramente excluían de los efectos del plan de cesantía unos puestos técnicos en particular.[18] Sin embargo, en el caso ante nuestra consideración debemos analizar un lenguaje de exclusión muy distinto.

En cuanto a los empleados exentos bajo el texto original de la Ley 7, el Artículo 37.02 se refería, en sus incisos (a), (b), (c), (d), (e), (f), (g) y (h), a empleos o cargos concretos y específicos.[19] Al enmendar ese artículo y aumentar el número de empleos excluidos del plan de cesantía, la Ley 37 añadió empleos concretos a las disposiciones existentes bajo la Ley 7 pero también creó nuevos incisos para incluir empleos que son prescritos de

---

[18] A saber, en <u>Negrón Matos</u> el caso trataba sobre el Artículo 37.02(b) que incluye "oficiales de corrección y oficiales juveniles", mientras que en <u>Báez Rodríguez</u> el Artículo 37.02(i) incluye los puestos de "[p]atólogos, personal pericial y técnicos del Instituto de Ciencias Forenses". Debemos resaltar que aunque el Artículo 37.02(b) se mantuvo inalterado por la enmiendas de la Ley 37, el texto original del la Ley 7, que concernía al Instituto de Ciencias Forenses, incluía en su Artículo 37.02(h) solamente a los "patólogos del Instituto de Ciencias Forenses". En este último caso la enmienda resultó, más allá de cambiar la enumeración del referido inciso, en añadir otros empleos o puestos generales a la lista de los excluidos del plan de cesantía.

[19] Es decir, originalmente serían excluidos del plan de cesantía empleos o puestos particulares, tales como: policías, bomberos, oficiales de corrección y juveniles, maestros, bibliotecarios, médicos, paramédicos, enfermeras, farmacéuticos, técnicos de laboratorio, trabajadores sociales, operadores del sistema de llamadas de emergencia y patólogos.

forma general. Entre éstos se encuentran los incisos (j), (k), (l) y (m) del Artículo 37.02 que incluyen: "**[e]mpleados** de la Comisión de Relaciones del Trabajo de Servicios Públicos y la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público", "**[p]ersonal** de la Oficina de Servicios con Antelación al Juicio", "**[p]ersonal** del Registro de la Propiedad" y "**[p]ersonal** de la Junta de Libertad Bajo Palabra".

En su moción en oposición a la petición de *certiorari* el ELA argumentó que el Artículo 34 de la Ley 7, según enmendada, es la disposición que rige sobre la aplicabilidad de dicha ley y que la misma no exime de los efectos del plan de cesantía al Departamento de Justicia, que es la agencia a la cual está adscrito el Registro de la Propiedad. De esta forma la parte demandada resalta que el Artículo 32.07 debe ser interpretado conjuntamente con el Artículo 34. Señala, además, que al haber discrepancia en el lenguaje del Artículo 37.02, lo que corresponde es que la JREF determine cuáles empleados quedarán, en efecto, exentos de la Fase II de la Ley 7.[20]

Concretamente, nos encontramos ante una situación donde el término "**personal**" se contrapone al propio lenguaje del Artículo 37.02 que excluye a "**los empleados de las Agencias que según sus clasificaciones llevan a cabo funciones esenciales**". Para propósitos de la interpretación judicial, y ante situaciones como la presente, este Tribunal ha

---

[20] *Moción de Desestimación y/o en Oposición a que se Expida el Recurso de Autos*, 12 de enero de 2010, pág. 12-14.

expresado que la literalidad de una ley sólo puede ser ignorada cuando ésta es claramente contraria a la verdadera intención o propósito legislativo. Es entonces cuando debemos consultar el historial del estatuto a interpretarse, sin olvidar que "[l]a exposición de motivos de la ley, los informes de las comisiones y los debates en el hemiciclo, en adición al texto de la misma, son las fuentes de mayor importancia en la tarea de determinar el significado de un acto legislativo".[21] Si la función de las enmiendas de la Ley 37 era esclarecer la intención legislativa de la Ley 7, nos corresponde como máximo foro realizar un ejercicio de hermenéutica para descifrar la misma. En esta instancia lo que corresponde es penetrar la superficie verbal del problema, precisar el diseño y la razón de ser de las disposiciones legales envueltas y sopesar los intereses en juego, para intentar acercarnos a la interpretación más justiciera.[22]

Comenzamos, pues, por auscultar el significado del vocablo "personal" incluido en el Artículo 37.02(1). En primer lugar, encontramos que el término "personal" no está definido en el texto de la Ley 7 ni en su historial legislativo. Cuando un estatuto no contiene una definición del vocablo en controversia la palabra debe entenderse en el

---

[21] Dpto. Hacienda v. Telefónica, 164 D.P.R. 195, 204 (2005); Pérez v. Gobierno Municipal de Lares, 155 D.P.R. 697, 706-707 (2001); Pueblo v. Zayas Rodríguez, 147 D.P.R. 530, 538-539 (1999).

[22] Pueblo v. Negrón Caldero, 157 D.P.R. 413, 423 (2002); Suc. Álvarez Crespo v. Pierluisi, supra, a la pág. 275; Pueblo v. Tribunal Superior, 104 D.P.R. 363, 366 (1975).

sentido ordinario y usual que se le adscribe, tomando en consideración que la interpretación judicial debe hacerse con fines socialmente útiles.[23] Así las cosas, no podemos negar que el término "personal" es amplio y abarcador. Éste se define de forma general como el "[c]onjunto de las personas que trabajan en un sitio",[24] o como el "**[c]onjunto de las personas que pertenecen a determinada clase, corporación o dependencia. Empleados**".[25] (Énfasis nuestro). A su vez, y desde una perspectiva económica y administrativa, se refiere a un "[n]ombre genérico que se utiliza **para designar el factor trabajo de una empresa o conjunto de empleados de la misma, cualquiera que sea su grado de cualificación profesional**, si bien se ha hecho clásica su clasificación en tres niveles o grupos: asalariados, mandos intermedios y ejecutivos o directivos".[26] (Énfasis nuestro). También desde el punto de

---

[23] Pueblo v. Cosme Vargas, 96 D.P.R. 836, 842 (1969); Bacardí Corporation v. Tribunal de Contribuciones, 75 D.P.R. 131, 137 (1953).

[24] M. Moliner, Diccionario de uso del español, Ed. Gredos, Madrid, 1991, Pág. 717.

Véase, además, las definiciones siguientes: "Conjunto de empleados de una empresa. Plantilla." M. Vaquero y A. Morales, Tesoro Lexicográfico del español de Puerto Rico, Academia Puertorriqueña de la Lengua Española, Ed. Plaza Mayor, San Juan, 2005, pág. 602; "A body of persons usually employed (as in a factory, office or organization)", Merridan Webster's Collegiate Dictionary, Merriam-Webster, 10th ed., Springfield, 1993, pág. 867.

[25] I. Rivera García, Diccionario de términos jurídicos, Ed. Equity, 2da ed., Oxford, 1985, pág. 204.

[26] A. Suárez Suárez, Diccionario de Economía y Administración, Ed. McGraw-Hill, Madrid, 1992, pág. 215.

vista laboral se ha definido de una forma similar, es decir: "[t]he working force or body of persons employed by an organization, firm or individual. **The term… is synonymous with employees, staff, and workers**".[27] (Énfasis nuestro).

Hemos de notar que si adoptamos cualquiera de estas definiciones del término "personal", en su sentido común y corriente, y hasta técnico, se colige que el estatuto prescribe la exención del plan de cesantía a la totalidad de la fuerza laboral empleada en el Registro de la Propiedad. No obstante, y debido a la incongruencia lingüística del Artículo 37.02, debemos remitirnos al historial legislativo. De éste se desprenden las expresiones siguientes:

> *Sra. González Colón:* "**Y a mí me parece importante excluir también el programa de Registro de la Propiedad**, esos técnicos que están entrando las notas y los documentos del registro de la propiedad, porque el registro de la propiedad, **si estuviera al día** y no tuviéramos los más de 658 mil documentos sin registrar, **estuviera generando entre 200 y 350 millones de dólares al año, nuevo, limpio, que estarían en el Fondo General.** Pero como no se le asigna el dinero para utilizar la tecnología y **no se le asignan las manos para poder trabajar con esos casos seguimos perdiendo anualmente esa misma cantidad, y por eso estamos excluyéndolo de la Ley 7**".[28] (Énfasis nuestro).

---

También, véase, "equipo de personas que forman parte de la plantilla de una empresa y en la que prestan servicios". A. Andersen, <u>Diccionario de Economía y Negocios</u>, Ed. Espasa, Madrid, 1999, pág. 481.

[27] P. Casselman, <u>Labor Dictionary</u>, Philosophical Library, New York, 1949, pág. 357.

[28] P. de la C. 1640, Diario de Sesiones de 19 de junio de 2009, *pág. 8.*

Aunque la expresión de la Presidenta cameral hace alusión a aquellos "técnicos que están entrando las notas", lo cual, tomado aisladamente, se podría interpretar como indicio de que la enmienda buscaba excluir solamente a ese personal técnico, debemos notar el reconocimiento del atraso en la inscripción y la carencia de mano de obra en las labores del Registro de la Propiedad, lo cual fortalece el argumento de que la exclusión se refiere al programa en su totalidad.

Abona a nuestro entendimiento de la intención legislativa la posterior aprobación de la Ley Núm. 216 de 27 de diciembre de 2010, mejor conocida como *Ley para Agilizar el Registro de la Propiedad*, la cual reconoció un atraso de 600,000 documentos a ser inscritos. Del historial legislativo de esta pieza legislativa se desprende la preocupación de la legislatura, ya que debido a "la situación económica general, **la probabilidad de que se asignen más fondos al Registro de modo que puedan añadirse funcionarios que tramiten los documentos pendientes es mínima**".[29] (Énfasis nuestro).

La Orden Administrativa del Departamento de Justicia emitida en cumplimiento de la Ley 216 dispone que se asignará por sección un mínimo de dos "empleados" del Registro para llevar a cabo el proceso de identificación de documentos prescrito en su Artículo 3. Debemos notar que el personal que llevará a cabo estas funciones se denomina

---

[29] Informe Positivo de la Comisión de lo Jurídico y Ética sobre el P. de la C. 2683, de 22 de junio de 2010, pág. 7.

simplemente como "empleados" y tendrá las tareas siguientes: verificar que el número de asiento y diario corresponda con el del documento en la minuta de presentación, poner sellos de inscripción y cancelación, cotejar el proceso con la bitácora y llenar diversos formularios. Esto significa que el grueso del trabajo, o sea, la identificación y separación de documentos y comprobantes de 4,000 documentos al mes, será realizado no por el personal pericial o técnico, sino por personal general que deberá ser reasignado, no importa sus puestos regulares, para cumplir con el proceso de inscribir los documentos atrasados.[30] De esta forma podemos colegir que el uso del término "personal" en la Ley 37 es consistente con posteriores actos legislativos que buscan salvaguardar en su totalidad el programa del Registro de la Propiedad, mediante un proceso de reubicación laboral del personal que llevará a cabo la fase inicial del proceso de inscripción expedita.

Recalcamos, además, que existe una clara distinción entre el lenguaje que se usa para identificar este personal y el utilizado por la Ley 7 para otras categorías de personal. Así, observamos que mientras el Artículo 37.02(i) se refiere al "personal pericial" del Instituto de Ciencias Forenses, el Artículo 37.02(n) se refiere al "personal de

---

[30] Véase, Parte III (B) (1 y 4), OA Núm. 2011-01 de 24 de enero de 2011, *Medidas en Torno a la Implementación de la Ley Núm. 216 de 27 de diciembre de 2010* y el Artículo 13 del Reglamento Núm. 7988 de 4 de febrero de 2011.

apoyo técnico" de Rehabilitación Vocacional.[31] Es evidente que los empleados, o el personal, a ser excluidos del plan de cesantía de estas dos agencias se distinguen del término raso "personal", utilizado sin calificación para describir los empleos del Registro de la Propiedad.

Este razonamiento hace eco nuevamente en las expresiones recogidas en el historial legislativo, las cuales revelan que esta distinción no fue producto del azar o de un lapso de desapercibimiento:

> *Sr. Cintrón Rodríguez:* "[Enmiendas para excluir de los despidos y cesantías voluntarias]… Maestros de la escuela de Artes Plásticas, **personal pericial y técnico de Ciencias Forenses**… **empleados de la Comisión de Relaciones al Trabajo del Servicio Público, Registro de la Propiedad,** vamos a incluir a los consejeros, también, de **Rehabilitación Vocacional, y personal técnico y pericial de dicha oficina**…".[32] (Énfasis nuestro).

En esta instancia el representante cameral es contundente al equiparar el término "personal", en cuanto al Artículo 37.02(l), con el de "empleado". Es decir, no solamente se intima que el programa del Registro de la Propiedad había de ser excluido de la Fase II en su totalidad, sino que el vocablo "personal" en solitario se utiliza conforme a su significado corriente y técnico que comprende a toda la plantilla laboral de la institución.

---

[31] Notamos que, al igual que el término "personal" del Registro de la Propiedad, los términos "personal pericial y técnico" y "personal de apoyo técnico" del Instituto de Ciencias Forenses y del programa de Rehabilitación Vocacional, correspondientemente, fueron incluidos en el texto del Artículo 37.02 a tenor con las enmiendas de la Ley 37.

[32] P. de la C. 1640, s*upra*, *pág. 21*.

Procedemos ahora a examinar las razones por las cuales se enmendó la Ley 7. El P. de la C. 1640 esclarece en su exposición de motivos que en aras de proteger los intereses del pueblo de Puerto Rico "[e]s responsabilidad de esta Asamblea Legislativa velar porque las medidas que componen las Fases I, II y III del referido Capítulo se implanten de una manera eficiente y responsable, cónsonas plenamente con los objetivos de política pública de esta Ley, según dispuestos en su Artículo 2".[33] Los fines de la Ley 7 se plasman nítidamente en dicho artículo, el cual declara expresamente ciertas metas gubernamentales, tales como: crear un plan integrado para "restablecer la salud fiscal y las bases para que el Gobierno pueda impulsar el desarrollo económico", entre otros asuntos.[34]

Podemos deducir del historial legislativo que la inclusión del "personal" del Registro de la Propiedad en el Artículo 37.02(l) cumple con los dos propósitos principales de las enmiendas presentadas por las Comisiones de Hacienda y Gobierno en su Informe Positivo, es decir: **"promover el desarrollo económico y proteger ciertos empleos en el sector público de alta importancia para el servicio de la ciudadanía".**[35] (Énfasis nuestro). Esto es así, debido a la importancia de los servicios del Registro de la Propiedad para el bienestar general de la ciudadanía. Es decir, allí

---

[33] Informe Positivo Conjunto P. de la C. 1640, de 25 de junio de 2009, pág. 5.

[34] Artículo 2 de la Ley 7, *supra*.

[35] P. de la C. 1640, *supra*, pág. 16.

se hacen constar las transacciones que afecten la titularidad de los derechos reales y otros derechos inscribibles que se impongan sobre los bienes inmuebles. De esta forma, al estar los documentos inscritos adquieren publicidad y dan eficacia a las garantías reales que confieren protección a adquirentes y acreedores, junto a la defensa y legitimación de las titularidades inscritas.[36] En fin, el Registro de la Propiedad asegura el tráfico de los diversos negocios y actos jurídicos, lo cual constituye el cúmulo de la seguridad jurídica, eslabón indispensable en la protección de la economía pública y en los esfuerzos para paliar los embates de una crisis financiera.[37]

Para complementar nuestro análisis sobre la naturaleza socio-económica del Registro de la Propiedad, nos remitimos a las palabras del doctor Vázquez Bote quien señala la

---

[36]    Véase el Artículo 7 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2051.

Además, "[e]l registro efectúa una calificación de legalidad registral del negocio, dando por bueno y por auténtico, tanto el contenido de las afirmaciones de los otorgantes como las certificaciones técnicas del propio notario derivadas de su estudio de los antecedentes que legitiman la operación, llámese título de propiedad, antecedentes dominiales, representaciones invocadas, situación impositiva, identidad y capacidad jurídica actual de los otorgantes para un otorgamiento plenamente valedero, y todo lo necesario para un "buen resultado juridico" del negocio de fondo documentado". H. Prez Montero, Necesidad Social De La Función Notarial, 44 Rev. Der. P.R. 253, 275 (2005).

[37] "[S]ólo recientemente se ha comenzado a considerar la ausencia de seguridad jurídica como uno de los factores limitantes del crecimiento económico". E. Highton y A. Vitale, La función notarial en la comunidad globalizada, Ed. Rubinzal-Culzoni, Buenos Aires, 2005, pág. 61.

importancia que tiene esta institución en el desenvolvimiento de nuestro país. Éste expresa que "…un buen Registro de la propiedad, cuyo contenido es la expresión más fiel y posible de la realidad inmobiliaria, [es un] instrumento magnífico, y muy económico, ante la perspectiva del desarrollo de un país".[38] Además, nos reitera que éste "… [facilita] las transacciones y la colaboración social [y] ayuda a ambas partes que en aquél expresan su relación. Así estructurado, **el Registro de la propiedad no sólo ayuda al desarrollo, sino que él mismo es el desarrollo**".[39] (Énfasis nuestro). A una conclusión similar se puede llegar al estudiar la función de nuestro Registro de la Propiedad en la protección de la seguridad jurídica, no tan sólo a nivel local, sino dentro de un marco globalizado e internacional. De este enfoque se concluye, forzosamente, que "**[s]i bien la seguridad jurídica integra el plexo de valores jurídicos esenciales de toda convivencia civilizada**, y –por su importancia y contenido– excede el marco que propone un análisis estrictamente económico, **corresponde asegurar que se trata de un valor operativo o condicionante del crecimiento económico**".[40] (Énfasis nuestro).

---

[38] E. Vázquez Bote, <u>Sentido de la Reforma Hipotecaria en Puerto Rico</u>, Tesis Doctoral en Derecho, San Juan, 1972, pág 107.

[39] *Íd.*, pág 110.

[40] E. Highton y A. Vitale, *supra*, pág. 61.

Según lo antes dispuesto, el eximir del plan de cesantía al personal del Registro de la Propiedad no solamente asegura el buen funcionamiento de un servicio esencial e indispensable para la ciudadanía, sino que propicia el desarrollo económico de Puerto Rico. Como ya vimos, la exposición de motivos de la Ley 7 informa que su fin es alcanzar un estado de crecimiento económico estable para salvar el crédito de Puerto Rico, mientras que las enmiendas de la Ley 37 tenían como fin asegurar el buen funcionamiento del Gobierno y, en particular, mantener a flote nuestra economía. Es evidente, entonces, que aumentar el número de personas que serán excluidas del plan de cesantía en el caso del Registro de la Propiedad redunda en el bienestar general de nuestro país, mientras que restarle empleados, aunque sean los no técnicos, resultaría en mermar la productividad de dicha institución que tanto dinero genera para el Gobierno mediante el cobro de aranceles.[41]

El argumento del ELA, en cuanto a que el Artículo 34 refleja de forma fehaciente que no era la intención del legislador excluir de los efectos de la Ley 7 al Registro de la Propiedad en su totalidad, no nos convence. Aunque es cierto que el Artículo 34 debe ser interpretado conjuntamente con el Artículo 37.02, el análisis del ELA en nada atiende el historial legislativo del estatuto en cuestión e ignora por completo la naturaleza de la Ley 7 y la función socio-económica del Registro de la Propiedad.

---

[41] P. de la C. 1640, *supra*, pág. 8.

La importancia de esta institución es, en efecto, reconocida en el Artículo 37.02(l), que distingue al Registro claramente del Departamento de Justicia al que no se eximió del plan de cesantía. Al unir esto a las distinciones entre los incisos de este articulado, por razón del uso del término "personal" frente a "personal técnico y pericial", se comprueba la naturaleza indispensable de dichos empleos generales según la evaluación legislativa. En cuanto al término "personal del Registro de la Propiedad", al no delimitarse el mismo y, por ende, no reducirse su amplitud mediante la inclusión de un adjetivo o vocablo adicional que trace sus contornos, a saber, "personal técnico", "personal pericial", "personal administrativo", "personal directivo", etc., se revela la verdadera intención del legislador. Por otra parte, no es necesario recurrir a la JREF, como arguye el ELA, para determinar cuáles son los empleos esenciales dentro del término "personal" bajo el Artículo 37.02(l). En nuestro más reciente precedente determinamos claramente que la JREF no tiene la potestad de limitar las exenciones dispuestas en la Ley 7, según enmendada. O sea, la JREF sólo puede ampliar la lista de los empleados ya exentos y no está facultada para aplicar el plan de cesantía a los empleados cuyos puestos fueron incluidos expresamente en los renglones del Artículo 37.02.[42]

---

[42] "[L]a facultad de la J.R.E.F. bajo el Artículo 37.02 se limita a determinar cuáles otros empleados no incluidos en la lista deben ser excluidos de la aplicación de la ley…

Como ya hemos señalado, el uso continuo y distintivo del vocablo "personal" en las enmiendas a la Ley 7 no puede ser ignorado. Nada en el texto de la ley ni en el historial legislativo indica que la enmienda al Artículo 37.02 fue realizada a modo ejemplar o que haya sido producto de un error legislativo.[43] Por el contrario, el término "personal" es utilizado no tan sólo una vez, sino en tres ocasiones distintas y de forma consecutiva. En estas tres instancias la relación entre las agencias afectadas y sus funciones esenciales, sumamente delicadas en torno a la seguridad y el bienestar económico de Puerto Rico, son evidentes. Tampoco se puede imputar que la Asamblea Legislativa hace cosas inútiles, máxime cuando se trata de la realización de un acto legislativo como la aprobación de una enmienda.[44]

---

**Una interpretación contraria significaría que la enmienda lo que hizo fue limitar aún más las exclusiones dispuestas por ley al disponer que la JREF es quien determina cuáles empleados dentro de esos renglones están exentos de la aplicación de la Ley Núm. 7, supra**". (Énfasis nuestro). Báez Rodríguez v. Gobernador, *supra*.

[43] En Passalacqua v. Mun. de San Juan, 116 D.P.R. 618 (1985), rechazamos una interpretación "literalista" de la ley en vista de que la Asamblea Legislativa había cometido un error palpable en la promulgación de la ley. En aquella instancia, este Tribunal dictaminó que si dicho error resulta ser contrario al resto de la ley o menoscaba su efectividad, éste puede ser eliminado, como también puede añadirse una frase o palabras para que se pueda cumplir con la intención legislativa. Véase, Rivera Cabrera v. Registrador, 113 D.P.R. 661, 664-665 (1982), (el cual se centra en un simple "error de trámite" o de "elemental factura oficinesca" que resultó en una discordancia de una sola línea entre nueve incidencias de enmienda para duplicar los derechos de arancel).

[44] Talcott Inter American Corp. v. Registrador, 104 D.P.R. 254, 262 (1975); Flamboyán Gardens v. Junta de Planificación, 103 D.P.R. 884, 888 (1975).

Siguiendo estas consideraciones, concluimos que el legislador escogió cuidadosamente el vocablo que respondía a su verdadera intención. Contrario a lo que propone el ELA, si la Asamblea Legislativa hubiese querido referirse a los empleos en el caso del Registro de la Propiedad a ser exentos como sólo aquéllos que fueran técnicos, hubiese utilizado los términos "personal técnico" o "personal pericial" como lo hizo en los incisos (i) y (n) del Artículo 37.02 o hubiese añadido ejemplos concretos como en el caso del inciso (f).[45] En el caso ante nuestra consideración, no seguir al pie de la letra el significado corriente de "personal" equivaldría a menoscabar los esfuerzos realizados por la Asamblea Legislativa de rectificar ciertas deficiencias de la ley especial y robustecer la economía de Puerto Rico, excluyendo del plan de cesantía a la fuerza laboral del Registro de la Propiedad. Queda claro que la naturaleza y función del Registro de la Propiedad, junto al historial legislativo y el mismo texto de la Ley 7, según enmendada, denotan que esta interpretación cumple con el propósito económico de la ley especial.

En este caso, contrario a lo que ocurrió en Negrón Matos y Báez Rodríguez, no hace falta revisar las clasificaciones de los empleados cesanteados que recurren ante este foro para efectos de determinar si éstos se ubican en una categoría excluida del plan de cesantía. Basta con

---

[45] "[P]rofesionales de la salud (médicos, paramédicos, enfermeras, farmacéuticos y técnicos de laboratorio." Artículo 37.02(f), Ley Núm. 7, *supra*.

que la parte demandante, como en el presente caso, sea empleado del personal del Registro de la Propiedad y haya sido cesanteado a tenor con la Ley 7.

En resumen, concluimos que la enmienda al Artículo 37.02 de la Ley 7 tuvo como finalidad expresa resguardar de los efectos del plan de cesantía a todos los empleados del Registro de la Propiedad de Puerto Rico. La letra de la Ley 7, según enmendada, y el historial legislativo avalan esta interpretación y justifican dicha medida en aras de corregir ciertas deficiencias del texto original de la ley especial.

Por todo lo antes expuesto, se revoca la sentencia del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que se continúen los procedimientos.[46]

---

[46] En cuanto al caso AC-2010-0002, el ELA adujo que el reclamo de la señora Anca Santiago era académico y debía ser desestimado. Adjunto a su solicitud, la parte demandada nos produjo una *Resolución en Reconsideración* de la CASARH, de 30 de junio de 2010, donde se resolvió que, debido al dictamen de este Tribunal en Báez Rodríguez, la parte demandante sería reinstalada a su puesto en el Registro de la Propiedad. Se ha reconocido que un caso no es justiciable cuando se ha tornado académico, o sea, cuando éste deja de presentar una controversia real que amerite la intervención de los tribunales de justicia. Véase, Moreno v. Pres. U.P.R. II, 2010 T.S.P.R. 70; Lozada Tirado v. Tirado Flecha, 2010 T.S.P.R. 9; Romero v. E.L.A., 169 D.P.R. 460 (2006); Hernández Torres v. Hernández Colón, 131 D.P.R. 593 (1992); E.L.A. v. Aguayo, 89 D.P.R. 552 (1958). Es norma trillada que un caso se torna académico cuando su condición de controversia viva y presente cesa por el transcurso del tiempo. Emp. Pub. Des., Inc. v. H.I.E. T.E.L., 150 D.P.R. 924 (2000); PPD v. Gobernador I, 139 D.P.R. 643 (1995). Esto significa que la controversia real debe existir en todas las etapas del proceso judicial, tanto en la inicial como en la apelativa. Presidente de la Cámara v. Gobernador., 167 D.P.R. 149, 157 (2006). La señora Anca Santiago no se expresó en cuanto a la moción solicitando desestimación por academicidad y otros extremos presentada

Se dictará sentencia de conformidad.


                                        Liana Fiol Matta
                                        Jueza Asociada

---

por el Estado. Tampoco compareció desde que expresó su negativa de aceptar la oferta de transacción del ELA y no nos ha puesto en posición para determinar si, en efecto, fue reinstalada a su puesto. Por tanto, procede declarar su reclamo académico y desestimar su recurso de apelación civil.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Madeline Sánchez Díaz, *et al.*
        Peticionarios


            v.                          CC-2009-1080
                                          cons. con
                                        AC-2010-002

Estado   Libre   Asociado   de
Puerto  Rico  (Departamento  de
Justicia), *et al.*
        Recurridos




                        SENTENCIA


En San Juan, Puerto Rico, a 4 de mayo de 2011.

        Por  los  fundamentos  expuestos  en  la  Opinión  que
antecede,  la  cual  se  hace  formar  parte  integrante  de  la
presente  Sentencia,  se  revoca  la  sentencia  del  Tribunal de
Apelaciones  y  se  devuelve  el  caso  al  Tribunal  de  Primera
Instancia  para  que  se  continúen  los  procedimientos.

        Lo  pronunció  y  manda  el  Tribunal  y  lo  certifica  la
Secretaria  del  Tribunal.



                    Aida  Ileana  Oquendo  Graulau
                    Secretaria  del  Tribunal  Supremo